**UNITED STATES of America,
Appellant,**

v.

**(UNDER SEAL), Appellee.**

**In re John DOE No. 462.**

**No. 84–1527.**

United States Court of Appeals,
Fourth Circuit.

Argued July 11, 1984.

Decided Sept. 24, 1984.

Certiorari Granted Jan. 21, 1985.
See 105 S.Ct. 954.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

The United States appeals from the district court's order quashing, on fifth amendment grounds, a portion of a grand jury subpoena directing appellee to produce specified records and papers held by him in an individual capacity.[1] The district court, relying on *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), held that the fifth amendment prevented the government from subpoenaing incriminating personal documents, notwithstanding the fact that appellee was given immunity for the implicit "testimony" involved in the act of producing the documents. On this appeal, the government argues that the judgment of the district court should be reversed because, it contends, the fifth amendment does not protect an individual against the compelled disclosure of the *contents* of incriminatory documents or papers, no matter how personal or private they may be. Because we believe that the Supreme Court's decision in *Boyd* is contrary to the position urged by the government, we affirm the judgment of the district court.

I

In March 1984, on application of the assistant United States Attorney, the federal grand jury sitting in the Eastern District of Virginia issued a subpoena duces tecum to appellee, who is a target of the grand jury's investigation into certain alleged narcotics, tax and currency violations. The subpoena required appellee to produce specified "personal records" for the period extending from January 1, 1975 to the date of the subpoena's issuance. Included within the scope of the subpoena were "records of purchases, trades, sales, receipts, gifts and distributions of controlled substances."[2]

William G. Otis, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellant.

John M. Dowd, Heron, Burchette, Ruckert & Rothwell, Neil J. Welch, Washington, D.C., on brief, for appellee.

1. Our jurisdiction is based on 18 U.S.C. § 3731.

2. Item J of the grand jury subpoena required appellee to produce records of sole proprietor-

On April 10, 1984, appellee filed a motion to quash that portion of the subpoena requiring him to produce documents held by him in an individual capacity. He argued, first, that the subpoena was overbroad, and irrelevant to the grand jury's investigation,

ships. Appellee did not assert a fifth amendment privilege as to these documents and fully complied with Item J. *Cf. United States v. Doe,* — U.S. —, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (records of sole proprietorship not protected by fifth amendment). Appellee also turned over all corporate documents subpoenaed by the grand jury. The critical document-identifying text of the subpoena at issue in this case is as follows:

I. Personal records of [appellee] for the period January 1, 1975 through present (unless a different period is specified elsewhere *):

  A. 1975 income tax returns

  B. Records of real estate transactions, including but not limited to:
    1. Sales contracts/purchase agreements
    2. Financial statements
    3. Settlement sheets
    4. Deeds
    5. Deeds of trust
    6. Mortgages/promissory notes

  C. Bank records, savings and loan records, credit union records, including but not limited to:
    1. Checking account statements, cancelled checks, deposit tickets, debit memos, credit memos
    2. Savings accounts statements, withdrawal slips, deposit tickets, debit memos, credit memos, interest statements
    3. Retained copies of cashier's checks, money orders, wire transfers
    4. Certificates of deposit and money market certificates, statements of account

  D. Records of loans received/made, including but not limited to:
    1. Applications
    2. Financial statements
    3. Notes
    4. Security agreements/collateral agreements
    5. Repayment records
    6. Interest statements

  E. Records of brokerage accounts, including but not limited to:
    1. Applications
    2. Financial statements
    3. Monthly/quarterly statements
    4. Purchase orders, purchase confirmation slips
    5. Sell orders, sales confirmation slips
    6. Cash receipts
    7. Receipts of securities delivered or received
    8. Stocks
    9. Dividend statements
    10. Interest statements
    11. Capital gains losses statements

  * F. Records of all gifts *ever* received or made in excess of $200.

  * G. Records of all inheritances *ever* received

  H. Records of purchases and sales of assets or expenditures in excess of $200, including but not limited to:
    1. Payment records
    2. Invoices, statements
    3. Titles, lease agreements
    4. Importation and duty records
    5. Appraisals, certificates of authenticity
    6. Contracts, purchase agreements, bills of sale
    7. Insurance and annuity policies

  I. Records of credit cards, including but not limited to:
    1. Monthly statements
    2. Charge receipts

  J. Records of businesses (sole proprietorships), including but not limited to:
    1. Cash disbursement records
    2. Cash receipts records
    3. Client/customer name, address and telephone records
    4. Inventory records
    5. Employment records, employees names and address records, Forms W-2, payroll records, payroll tax records and returns
    6. Invoices
    7. Receipts
    8. Shipping and delivery records
    9. Lease agreement
    10. Bank records (see I.C.)
    11. Loan records (see I.D.)
    12. Records of purchases of business assets and business expenditures (see I.H.)
    13. Credit card records (see I.I.)
    14. Records of sales of business assets

  K. Records of payments of legal fees, retainers and monies deposited with lawyers and/or law firms, including but not limited to records of: payees, addresses of payees, amounts and dates of payments.

  L. Records of purchases, trades, sales, receipts, gifts and distributions of controlled substances as defined by Title 21, United States Code, Sections 811 and 812, for the period January 1, 1970 through the present, including but not limited to:
  A. Documents reflecting the names, addresses and telphone [sic] numbers of customers, sellers, traders, suppliers, importers, distributers [sic], transporters, drivers, storers and all other persons and/or entities involved in the acquisition, transportation, storage, disposal, advertising, promotion, sale and gifts of controlled substances.
  B. Documents reflecting expenses of acquisition, transportation, storage, disposal, advertising, promotion, sale and gifts of controlled substances.

(Emphasis in original.)

and, second, that the compelled production of personal records violated his fifth amendment right not to incriminate himself.

Following a hearing on April 13, 1984, the district court granted the motion to quash "to the extent that the subpoena calls for the production of personal records of appellee." [3] The court directed counsel for appellee to submit for the court's *in camera* inspection a list of the documents that were asserted to be "personal." At the same time, at the government's request, the court granted appellee immunity for the act of producing the documents. [4]

■ After reviewing the submitted description, the district court concluded that the documents were "clearly personal," and therefore were protected by the fifth amendment. The court ordered the *in camera* submission sealed until further order of the court, [5] and the United States noticed an appeal from this order. [6]

## II

The government contends that the district court should be reversed because the fifth amendment does not protect appellee from the subpoena of his personal documents. Specifically, the United States argues that no fifth amendment privilege attaches to the *contents* of pre-existing documents of any kind. Although the government admits that subpoenaed documents constitute "testimonial evidence," it contends that the fifth amendment does not come into play because the individual's voluntary choice, not governmental compulsion, results in the incriminating documentary "testimony." Since the incriminating testimony is not *itself* compelled, so the argument goes, there is no constitutional right that prevents its disclosure to the government, even though the disclosure is unquestionably the result of government compulsion.

■ In line with this view, the government contends that the fifth amendment places no limits on governmental intrusion into an individual's private affairs, other than a narrow proscription against the extortion of testimony. *Cf.* 8 Wigmore, *Evidence* § 2263 (McNaughton rev. 1961) (privilege "directed at the employment of legal process to extract from the person's own lips an admission of guilt"). An individual's "right to privacy" is thus left protected in a constitutional sense only by the conditional limits set by the fourth amendment. [7]

3. The district court rejected appellee's contentions concerning the relevance and overbreadth of the subpoena. That finding is not challenged on appeal.

4. The application of the United States was submitted pursuant to 18 U.S.C. §§ 6002 & 6003. The immunity order stated that "the fact of [appellee's] compliance with the aforedescribed subpoena may not be used against [appellee] in any criminal case, except in a prosecution for perjury, false statements or failing to comply with this Court's ORDER OF IMMUNITY."

5. The district court noted that "many of the documents consist of checks, vouchers or documents, the original or copies of which are in the hands of third parties." The court thought it "ironic" that the government could subpoena *these documents from the relevant third parties,* but held that no waiver of appellee's fifth amendment right occurred when the documents were released to those individuals. We agree.

6. Appellee contends that the United States should have appealed from the earlier April 13 order and that its failure to do so resulted in the untimely filing of the notice of appeal. The April 13 order, however, did not determine which documents were "personal" but merely directed appellee to submit to the court a list of documents that were asserted to be personal. Not until the April 19 order did the government know whether *any* documents were to be considered privileged. We therefore hold that the April 19 order was the proper final order from which to appeal.

7. The fourth amendment places few constraints on the government's subpoena power. Notably, there is no requirement that the government have "probable cause" before subpoenaing documents or any other items. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 506, 90 L.Ed. 614 (1946). As to subpoenas, the fourth amendment guards primarily against too much indefiniteness or breadth in the subpoena and imposes a requirement that the subpoenaed items be relevant. *See id.; United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). The Supreme Court has also rejected the contention that a subpoena to obtain records should be subject to more

Because we believe that the government's argument is inconsistent with the long-standing holding of the Supreme Court, first enunciated in *Boyd*, we affirm the order of the district court quashing the subpoena on fifth amendment grounds.

*Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), involved a forfeiture action brought by the United States against thirty-five cases of plate glass, allegedly imported without the payment of import duties. In the course of the action, the district court entered an order [8] requiring the claimants of the glass to produce an invoice from the exporter. The Supreme Court held that the district court's order, and the statute pursuant to which it was entered, violated both the fourth and fifth amendments. Noting that the district court's order went even further than "the Act under which the obnoxious writs of assistance were issued," *id.* at 623, 6 S.Ct. at 528, the Court first held that "a compulsory production of a man's private papers to establish a criminal charge against him" *id.* at 622, 6 S.Ct. at 528, violates the fourth amendment's proscription against unreasonable searches and seizures.[9] Observing that both the fourth and fifth amendments protect an individual's right to privacy, the Court declared that the prohibition against the forced production of private papers involves "the very essence of constitutional liberty and security."

It is not the breaking of his doors and the rummaging of his drawers that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense; it is the invasion of this sacred right which underlies and constitutes the essence of *Lord* Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime ... is within the condemnation of that judgment. In this regard the Fourth and Fifth Amendments run almost into each other.

*Id.* at 630, 6 S.Ct. at 532.

A contrary reading of the Constitution, *Boyd* noted, might "suit the purposes of despotic power," but it conflicted with "the pure atmosphere of political liberty and personal freedom" enjoyed in this country. *Id.* at 632, 6 S.Ct. at 533. The Court was "unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." *Id.* at 633, 6 S.Ct. at 534. As a consequence, *Boyd* explicitly held that "a compulsory production of the private books and papers of the owner of the goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth

---

stringent fourth amendment requirements than other items: "A subpoena *duces tecum* issued to obtain records is subject to no more stringent fourth amendment requirements than is the ordinary subpoena." *United States v. Miller*, 425 U.S. 435, 446 n. 8, 96 S.Ct. 1619, 1625 n. 8, 48 L.Ed.2d 71 (1976) (business records of bank).

The substantive limits placed on government by the due process clause also unconditionally protect, in a few instances, the privacy of the individual. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

**8.** The statute pursuant to which the order was entered provided that the failure of the individual to produce the records designated by the government's motion resulted in the allegations stated in the motion being taken as true. *See Boyd*, 116 U.S. at 619–20, 6 S.Ct. at 526.

**9.** In an effort to distinguish the unreasonable search at issue in *Boyd* from searches for contraband, which the common law regarded as "reasonable," the Court noted that in the latter situation the government possessed a superior property right in the items searched for. In *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Supreme Court rejected the notion that the reasonableness of a search depended upon whether the items sought were "mere evidence" of a crime, or constituted "fruits and instrumentalities" of the crime.

Amendment to the Constitution." [10] *Id.* at 634–35, 6 S.Ct. at 534.

Later Supreme Court decisions have reaffirmed Boyd's essential holding. *See, e.g., Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974) ("the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony"); *United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974) ("grand jury may not compel a person to produce books and papers that would incriminate him"); *United States v. Dionisio,* 410 U.S. 1, 11, 93 S.Ct. 764, 770, 35 L.Ed.2d 67 (1973) (grand jury "cannot require the production by a person of private books and records that would incriminate him");[11] *Schmerber v. California,* 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908 (1966) (fifth amendment reaches "compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers"); *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) (privilege "protects the individual from any disclosure, in the form of ... documents, sought by legal process against him as a witness").

No later decision of the Supreme Court has held to the contrary on the point directly in issue. The government here relies on dicta in several recent decisions of the Court to support its view. The dicta are

assuredly there, but none of these decisions has overruled *Boyd.*

The Supreme Court's decision in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), which the government contends resulted in the "peaceful interment" of *Boyd,* involved a subpoena issued to a third party for the production of business records which were not written by the proponent of the privilege. The *Fisher* Court took pains to distinguish *Boyd,* and explicitly reserved judgment on the question presented here— whether the compelled production of the proponent's own papers would violate the Constitution. *See* 425 U.S. at 414, 96 S.Ct. at 1582. Other cases relied upon by the government merely reiterate the well-established premise that an individual holding the documents of an artificial entity, whether a corporation, partnership or sole proprietorship, cannot assert a fifth amendment privilege. *See United States v. Doe,* — U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (sole proprietorship); *United States v. Fishman,* 726 F.2d 125 (4th Cir. 1983) (sole proprietorship). *See also Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (search for business records of law office does not violate fifth amendment).

### III

Among other things, the fifth amendment evinces "our respect for the inviolability of the human personality and

---

**10.** The "owner" of the document subpoenaed in *Boyd* was a partnership, E.A. Boyd & Sons. In *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), the Supreme Court held that the fifth amendment does not protect the financial records of a partnership. In *Bellis,* however, the Court distinguished *Boyd,* noting that "we do not believe that the Court in *Boyd* can be said to have decided the issue presented today." *See id.* at 95 n. 2, 94 S.Ct. at 2186 n. 2. As *Bellis* noted, *Boyd* was decided on "the premise that it involved the 'compulsory production of a man's private papers.'" *Id.* (quoting *Boyd,* 116 U.S. at 622, 6 S.Ct. at 528).

**11.** The minimal fourth amendment constraints placed on the government's subpoena power, *see supra* note 7, have always been assessed in con-

junction with the fifth amendment's traditional protection of the individual's private papers. In *Dionisio,* for instance, the Supreme Court rejected a fourth amendment challenge to a grand jury subpoena, but noted that the fifth amendment prevented the government from requiring a person to produce incriminating private books and records. *See* 410 U.S. at 11, 93 S.Ct. at 770.

Under the view advocated by the government in this case, a grand jury could subpoena an individual's personal diary on the bare ground that it was in some way "relevant" to a broad-based investigation being conducted by the grand jury. If this were allowed, a grand jury subpoena would indeed have become a "talisman that dissolves all constitutional protections." *Dionisio,* 410 U.S. at 11, 93 S.Ct. at 770.

of the right of each individual 'to a private enclave where he may lead a private life.'" *Murphy v. Waterfront Commission*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1597, 12 L.Ed.2d 678 (1964) (quoting *United States v. Grunewald*, 233 F.2d 556, 581–82 (Frank, J., dissenting), *rev'd*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) ). *See also Bellis*, 417 U.S. at 91–92, 94 S.Ct. at 2184–2185; *Couch v. United States*, 409 U.S. 322 at 327, 93 S.Ct. 611 at 615, 34 L.Ed.2d 548 (1973). The fundamental teaching of *Boyd* is consistent with this purpose: the forced disclosure of private incriminating information jeopardizes the individual's right to keep at least that aspect of himself which is reflected in his private papers free from the intrusive hands of the government.[12] Implicit in the cherished right of the individual to "pursue happiness" is the concomitant right to express one's own thoughts free from the government's exaction of those thoughts upon penalty of one's liberty. We therefore hold, in line with *Boyd*, that the fifth amendment prevents the government from subpoenaing an individual's incriminating papers that are in his possession and are held by him in an individual, as opposed to representative capacity. *Accord United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *In re Grand Jury Proceedings*, 632 F.2d 1033, 1044 (3d Cir.1980). *See also United States v. Helina*, 549 F.2d 713 (9th Cir.1977). *But see In re Grand Jury Proceedings*, 626 F.2d 1051 (1st Cir.1980) (no protection for personal business records); *United States v. Schlansky*, 709 F.2d 1079, 1083 (6th Cir.1983) (no fifth amendment

protection against disclosure of contents of documents "less private" than personal diary), *cert. denied*, — U.S. —, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). Since the documents at issue in this case were held by appellee in his individual capacity, the district court's order quashing the subpoena in part is affirmed.

AFFIRMED.

12. The government has also argued, in the alternative, that the documents subpoenaed here are not sufficiently "private" to merit the protection of the fifth amendment. Private financial and commercial records, it contends, should not be privileged, even if intimate personal papers are found to be.

We decline, however, to engage in a case-by-case content-based determination of the privacy interest attendant to a given document. The proper line, we feel, has been drawn—whether the documents are held in an individual or representative capacity. Documents held in a representative capacity clearly reflect no privacy expectation on the part of the representative. *See Bellis*, 417 U.S. at 91–92, 94 S.Ct. at 2184–2185 (unlike personal records, "a substantial claim of privacy or confidentiality cannot often be maintained with respect to the financial records of an organized collective entity"). *See also United States v. Davis*, 636 F.2d 1028 at 1043 (5th Cir.1981) (refusing to alter fifth amendment protection depending on whether documents are "business-related or more inherently personal in content"). *Cf. Boyd* (fifth amendment protects against production of invoice).