UNITED STATES of America, Plaintiff,

v.

Matthew KATIN, a/k/a Motiejus Katinauskas, Defendant.

Civ. A. No. 84–3601–C.

United States District Court, D. Massachusetts.

Feb. 14, 1986.

Patti B. Saris, Asst. U.S. Atty., Boston, Mass., and Alan Held, Ronnie L. Edelman, Jan L. Jacobowitz, Office of Sp. Investiga-

tions, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Samuel Adams, Andrew N. Hartzell, Warner & Stackpole, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action in which the plaintiff, United States of America ("the government"), seeks to revoke the citizenship of the defendant Matthew Katin, a/k/a Motiejus Katinauskas. The matter is now before this Court on the government's motion to compel discovery. The government seeks a court order requiring the defendant to produce certain documents. The defendant, in opposition, claims a Fifth Amendment privilege against self-incrimination.

The defendant was born in Lithuania and is a naturalized citizen of the United States. According to the government, in 1949, the defendant applied to immigrate into the United States and sought a determination that he was a "displaced person" as defined in the Displaced Persons Act of 1948. As part of the application, the defendant allegedly represented that he had been a farmer and a smith on his father's farm until 1944, and that he had not been a member of, or participated in, any movement hostile to the United States. When the defendant later filed a petition for naturalization, he stated that the only foreign military service he had performed was in the Lithuanian Army from 1933 to 1939, and that the only club, organization, association or party he had ever belonged to in the United States or any other country was the Lithuanian Citizens Association.

The government alleges that the defendant misrepresented and concealed material facts in these applications and that, therefore, his citizenship should be revoked. According to the government, from the summer of 1941 through late 1943 the defendant was a member of a battalion of the Lithuanian Schutzmannschaft ("the Battalion"), a military unit which was established by the occupying armed forces of Nazi Germany. The Battalion, and consequently its members, assisted in the arrest, detention and murder of unarmed civilians, and in the persecution of Jews and other civilians in and around Kaunas, Lithuania and Minsk, Byelorussia. If the defendant is found to have served in the Battalion, he could be denaturalized and deported.

On October 8, 1985, the government deposed the defendant. At the deposition, the defendant refused to answer questions propounded by the government, claiming a Fifth Amendment right not to answer questions which might incriminate him. The defendant also refused, again on Fifth Amendment grounds, to produce documents requested by the government. Consequently, the government filed a motion to compel the defendant to answer all questions at his deposition and to produce all documents requested. At a hearing before this Court on November 19, 1985, I ruled that the defendant has the right to invoke the Fifth Amendment and to refuse to answer questions at a deposition. The government's motion to compel was therefore denied as to oral testimony. I now rule that the motion to compel the defendant to produce documents should also be denied.

■ The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." This privilege applies to the production of documents as well as to oral testimony. *E.g., Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). The purpose of the Fifth Amendment is to protect an individual's privacy and his dignity or integrity as a person. *In re Grand Jury Subpoenas Duces Tecum,* 722 F.2d 981, 984 (2d Cir. 1983). It preserves for the individual the right to a private life, as reflected in his private papers, free from the intrusive hands of the government. *United States v. (Under Seal),* 745 F.2d 834, 839–40 (4th Cir.1984), *vacated as moot,* —— U.S. ——, 105 S.Ct. 1861, 85 L.Ed.2d 155 (1985). The Fifth Amendment privilege against self-incrimination cannot be interpreted in a nig-

gardly fashion if it is to provide this protection. *In re Kave*, 760 F.2d 343, 354 (1st Cir.1985). Thus, it is enough for the defendant claiming the Fifth Amendment privilege to show that the documents sought would furnish a link in the chain of evidence needed to prosecute him. *Id.*

Beginning with *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Supreme Court's analysis of the Fifth Amendment as it pertained to the production of documents focused on the nature and content of the person's papers. *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d at 983. The private papers of an individual were held privileged so long as they were in the personal possession of the individual claiming the privilege. *Id.* at 983–84. Over the years, however, a line of Supreme Court decisions has shifted the emphasis of inquiry away from the nature and contents of the subpoenaed documents, and toward the question of whether the act of producing the papers constituted compelled self-incrimination. *Id.* at 985. In accordance with this shift, the Supreme Court found that the contents of the business records of artificial entities such as sole proprietorships are not privileged where the documents were created voluntarily and without compulsion. *United States v. Doe*, 465 U.S. 605, 606, 610, 104 S.Ct. 1237, 1239, 1241, 79 L.Ed.2d 552 (1984). In these cases, the Supreme Court left open the question of whether the contents of private papers may ever be privileged.[1]

The Courts of Appeals which have addressed the issue since the Supreme Court's latest discussion in *United States v. Doe*, have noted that the question is still open, and have concluded that private papers of an intimately personal nature may still be protected by the Fifth Amendment on the basis of their nature and contents alone. For example, in *United States v. (Under Seal)*, the Court of Appeals for the Fourth Circuit ruled that the Fifth Amendment prevents the government from subpoenaing an individual's incriminating papers which are in his possession and are held by him in an individual, rather than a representative, capacity. 745 F.2d at 840. Rejecting the government's argument that no Fifth Amendment privilege attaches to the contents of any pre-existing documents, the Court noted that the Supreme Court has not overruled its decision in *Boyd*. *Id.* at 839. *See also In re Proceedings Before the August 6, 1984 Grand Jury*, 767 F.2d 39, 41 (2d Cir.1985) (question of whether Fifth Amendment protects contents of private papers touching on more intimate aspects of person's life still open); *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.1985) (serious concern over privacy interests may protect intimately personal papers).

In the case now before this Court, the government seeks an order requiring the defendant to produce documents relating to the following: 1) date and place of his birth; 2) his school records since age 14,; 3) his citizenship or residence status in any country, regardless of length of stay, since age 14; 4) his immigration to the United States; 5) his naturalization as a United States citizen; 6) his service in any type of military force of any country from 1932–1950; 7) all photographs of himself from age 14 until 1950; 8) employment in civilian jobs from age 14 until 1951; 9) any articles, books, memoirs, or writings of any kind by him, whether published or unpublished, relating to his activities during World War II or his immigration, citizenship, residence, military service and employment from age 14 to 1950; 10) relevant diaries since age 14; 11) relevant correspondence to or from any person other than his wife from age 14 to the present; and 12) materials in his

---

**1.** In the most recent Supreme court case on this issue, *United States v. Doe*, Justice O'Connor wrote in a concurring opinion that the Fifth Amendment "provides absolutely no protection for the contents of private papers of any kind." 465 U.S. at 618, 104 S.Ct. at 1245. Justice Marshall, however, disagreed with Justice O'Connor's interpretation of the Court's opinion, stating that the documents in *Doe* were business records and that the Court's holding related only to the act of production and statutory use immunity. *Id.* at 619, 104 S.Ct. at 1245. (Marshall, J., *concurring in part and dissenting in part*).

possession when he was deposed on January 23, 1984.

All items on the list are held by the defendant in an individual, as opposed to a representative, capacity. The documents requested relate to the defendant's personal life and, except for the list of his past employment, have no connection with the way the defendant makes a living. They are not business records or papers voluntarily prepared by the defendant in the pursuit of his profession. Rather, at least some of the documents requested by the government are of such a deeply personal nature that the compelled disclosure of their contents would violate our sense of privacy. Intimate personal papers such as private diaries, or drafts of letters or essays, are not business records whose contents are unprotected by the Fifth Amendment. *See In re Grand Jury Proceedings United States*, 626 F.2d 1051, 1054 n. 2 (1st Cir.1980). Thus the government's request for an order compelling the defendant to produce his personal photographs, diaries, memoirs and correspondence can be denied on the basis of the nature and contents of the documents.[2]

It is unnecessary, however, for this Court to base its decision solely on the private nature of the documents requested by the government because the very act of producing them is privileged. The Fifth Amendment protects the individual against compelled testimonial self-incrimination. *E.g., In re Grand Jury Proceedings United States*, 626 F.2d at 1054. The act of producing documents in response to a subpoena has communicative aspects of its own. *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1975). By complying with a subpoena for documents, an individual concedes their existence and his possession of them, and expresses his belief that the documents produced are those sought by the government. *Id.* The defendant's production of the documents may in fact be sufficient authentication to admit them in evidence at trial, and thus relieve the government of the burden of authentication. *Butcher v. Bailey*, 753 F.2d at 469. This compelled authentication constitutes an incriminating testimonial act unless the existence and location of the papers are a foregone conclusion, and the individual's act of production would not be sufficient authentication to admit the documents into evidence. *Id.* Thus the act of producing documents may be testimonial by acknowledging their existence, by acknowledging the person's control of the documents, or by acknowledging that the person producing them believes they are the documents sought, thereby authenticating them. *Id.*

Of the documents requested in this case, there is nothing in the record to show that the government is even certain of the existence of the records concerning the defendant's birth, schooling, citizenship, residences, military service, employment, writings, diaries, or correspondence. The forced production of such papers by the defendant would establish their existence and location, and thus clearly constitute a compelled testimonial act.

The records relating to the defendant's immigration and naturalization present a different question. Legal documents attesting to an individual's immigration and naturalization may fairly be presumed to exist and be in the possession of the person to whom they pertain. By producing immigration and naturalization documents, however, the defendant would be identifying and authenticating evidence,

---

2. In fact, the request could be denied *in toto* because of the nature and contents of the documents. In *United States v. (Under Seal)*, the Court of Appeals for the Fourth Circuit affirmed a finding by a district court that the following documents, held by the target of a grand jury investigation in an individual capacity, were clearly personal and protected by the Fifth Amendment: income tax returns, records of real estate transactions, bank records, records of gifts made or received, records of inheritances, records of the purchase and sale of assets in excess of $200, credit card records, records of legal fees, and records concerning controlled substances. 745 F.2d at 835, 836 n. 2. The compelled production of documents at issue in this case would present no less serious an invasion of an individual's privacy.

and thus committing a testimonial act. If the records contain any facts linking the defendant to the criminal activities charged in the complaint against him, then the forced production of the records would entail compelled testimonial self-incrimination. *In re Kave*, 760 F.2d at 358.[3]

 The final item is the government's request for documents in the defendant's possession at a deposition conducted on January 23, 1984. I find this request vague. I note that the documents referred to may include some of an intimately personal nature which, as discussed above, may be privileged because of their contents. Furthermore, the very act of producing the documents could authenticate them, and therefore represent a testimonial act.

To be privileged, each act of production must not only be testimonial; it must also be incriminating. *E.g., Fisher v. United States*, 425 U.S. at 410, 96 S.Ct. at 1580. The defendant asserts that all the documents requested by the government may tend to incriminate him by providing a link in the chain of evidence necessary to connect him to the crimes and associations alleged in the complaint or by leading to the discovery of evidence that could potentially incriminate him. The privilege against self-incrimination covers not only acts or answers which would in themselves support the conviction of an individual; it also protects testimony which would furnish a link in the chain of evidence needed to prosecute or which might lead to other evidence which could be used against the witness. *In re Kave*, 760 F.2d at 354. Although the testimony must have a real tendency to incriminate, it need only be evident that the response is potentially incriminating to sustain a claim of the privilege against self-incrimination. *Id.* at 354–55. In this case, each of the documents requested has the potential of containing or leading to evidence which would link the

defendant to the crimes alleged by the government.

The requirement that the act of producing the subpoenaed documents be both testimonial and potentially incriminating is therefore satisfied as to all of the government's requests.

Order accordingly.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

The plaintiff's motion to compel production of documents is denied.

authentication inherent in compelled compliance with a subpoena.

---

**3.** The government does not appear to have offered the defendant a grant of immunity, pursuant to 18 U.S.C. § 6002, covering the implied