**In re Jeffrey STEINBERG,
Petitioner, Appellant.**

**Nos. 87–1954, 87–2031.**

**United States Court of Appeals,
First Circuit.**

Heard Dec. 11, 1987.

Decided Jan. 22, 1988.

William B. Moffitt with whom Lisa Bondareff Kemler, William B. Moffitt & Associates, Alexandria, Va., Rikki J. Klieman and Freedman & Atherton, Boston, Mass., were on brief, for appellant.

Mark D. Rasch, Dept. of Justice, Washington, D.C., with whom Frank L. McNamara, Jr., U.S. Atty., and John J.E. Markham, II, Asst. U.S. Atty., Boston, Mass., were on brief, for U.S.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal of an order holding Jeffrey Steinberg in contempt of court for failing to produce certain notebooks for use by the government at a trial in which he and his wife are codefendants.[1] We affirm.

Appellant Steinberg, his wife Michelle, and others are awaiting trial on charges of conspiracy to obstruct a grand jury investigation of fraud in the fund-raising activities for the 1984 presidential campaign of Lyndon LaRouche. The initial indictment was issued on October 6, 1986. Also on that date, government officials executed search warrants on various LaRouche offices. Among the items seized were hundreds of notebooks containing references to the charged conspiracy to obstruct justice. These notebooks were maintained by Jeffrey and Michelle Steinberg and other members of LaRouche's security staff. Entries in the notebooks were in chronological order and often referred to ongoing government investigations of the LaRouche organization. Approximately 80 notebooks prepared by Michelle Steinberg and 20 notebooks prepared by Jeffrey Steinberg were found. However, only two of the Jeffrey Steinberg notebooks found cover the period of the alleged conspiracy to obstruct justice. The government seeks to compel Steinberg to produce other note-

---

1. This case originally came to us as a consolidation of appeals from two separate orders, each of which orders held Jeffrey Steinberg, petitioner-appellant herein, in contempt of court for failing to produce the notebooks. The first such subpoena was issued in connection with the trial of Roy Frankhauser, a codefendant of Steinberg's, whose trial was severed from the main case by the district court. Frankhauser's separate trial was scheduled in advance of the main trial. Inasmuch as Frankhauser's trial was concluded shortly before oral argument in this court, the appeal from the ruling in that case has become moot. The second subpoena, however, was issued in connection with the main trial, which has yet to conclude. The contempt order in that matter presents a live controversy, and we address it in this opinion.

books he has prepared covering the period in question.

In an effort to secure these papers for use against Steinberg, his wife, and other codefendants, the government has issued a trial subpoena which now requires appellant to produce

[a]ll notebooks in [his] custody or control and of whatever kind containing any writing made on or after October 1, 1984 which mentions unauthorized credit card charges, Boston Grand Jury Investigation, FBI investigation, IRS, FBI, William Weld, Dan Small, Small, Richard Egan, Egan, Jim, Lee Fick, Fick, Baron, Gelber, Park or Sanders or John Scialdone or Scialdone.

The district court, on November 17, 1987, ordered Steinberg to comply with the subpoena and to produce the notebooks "forthwith." The order also granted immunity to appellant from any evidence which may be derived, directly or indirectly, from the *act of producing* the records ("production immunity"). This immunity did not extend to the *contents* of the notebooks nor did it explicitly contain any guarantee that they would not be used against appellant's wife.

Only two of appellant's arguments merit extended discussion.[2] First, appellant argues that the fifth amendment prohibition against compelled self-incrimination bars the use of the *contents* of his notebook at his criminal trial. He asserts that it is not sufficient that he has been given "production immunity"; rather, he claims that, because the documents are "personal," non-business records, he cannot be compelled to make them available for use at his trial absent *full* immunity, covering both the act of production and the contents of the notebooks. Second, because he claims the

records are "testimonial" in nature, he argues that use of those records against his wife is barred by the common law adverse spousal rule embodied in Fed.R.Evid. 501.

*The Fifth Amendment Privilege*

The principle that the fifth amendment protects the contents of private papers originated over one hundred years ago in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). As recently as 1974, the Supreme Court cited *Boyd* with approval for the proposition that "the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." *Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). Based on notions of privacy rights implied by both the fourth and fifth amendments, *see Boyd*, 116 U.S. at 630, 6 S.Ct. at 532, this privilege was believed to extend to personal business records "as well as to personal documents containing more intimate information about the individual's private life." *Bellis*, 417 U.S. at 87–88, 94 S.Ct. at 2182–83.

The scope of the *Boyd* doctrine, however, has recently undergone significant erosion. Only two years after *Bellis* was announced, the Court held that the fifth amendment provided no protection for the contents of tax records prepared by a taxpayer's accountant. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The Court found that much of the *Boyd* doctrine "[had] not stood the test of time," *id.* at 407, 96 S.Ct. at 1579, and that prohibition under the fifth amendment against compelled production of private papers "has long been a rule

---

**2.** Appellant also contends (1) that the documents in question are protected by a journalist's privilege; (2) that the order of immunity was invalid because the Acting United States Attorney did not have statutory authority to request it; (3) that the subpoena of October 27, 1987 was overbroad; and (4) that, under the reciprocal discovery rule of Fed.R.Crim.P. 16(b)(1)(A), the government cannot "discover" appellant's documents unless appellant has first requested discovery from the government. These arguments are without merit. First, appellant has made no showing whatsoever that

these documents are related to a journalistic endeavor. Second, at the time the application for the current order of immunity for the Steinberg trial had been submitted to the district court, the United States Attorney had been confirmed and sworn in. Third, the subpoena is very specific and requests only material which is relevant to the government's prosecution. Finally, the government is not conducting discovery but has secured a trial subpoena for appellant to produce evidence for the government's use at trial.

searching for a rationale...." *Id.* at 408, 96 S.Ct. at 1580. The Court emphasized that the privilege applies only when a person is *compelled* to make an incriminating *testimonial* communication. *Id.* Furthermore, the Court rejected the notion that the fifth amendment provides any general protection of privacy. *Id.* at 400–01, 96 S.Ct. at 1575–76. Nonetheless, the Court expressly declined to address the question of whether the content of "private papers" is protected by the fifth amendment. *Id.* at 414, 96 S.Ct. 1582.

In *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the Court again emphasized that the focus of self-incrimination analysis is on the *voluntariness* of the communication. This case held that personal business records seized pursuant to a valid search warrant could be used against a criminal defendant. The Court reasoned that use of this evidence did not compel the defendant to incriminate himself since the records had been compiled voluntarily and he had not been forced to produce or authenticate the documents.

The Court's most recent pronouncements in *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), clearly imply that there is little left of the *Boyd* doctrine. In expressly rejecting the suggestion in *Bellis* that contents of business records of a sole proprietorship are protected by the fifth amendment, *compare Doe,* 465 U.S. at 612, 104 S.Ct. at 1242, with *Bellis,* 417 U.S. at 87–88, 94 S.Ct. at 2182–83, the Court emphasized that the amendment "protects the person asserting the privilege only from *compelled* self-incrimination," 465 U.S. at 610, 104 S.Ct. at 1241 (emphasis in original). Although the holding again concerned business records, its scope appears to be broader. "If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." *Id.* at 612 n. 10, 104 S.Ct. at 1242 n. 10; *accord In re Kave,* 760 F.2d 343,

355–56 (1st Cir.1985). The Court did find that the act of producing the documents for government inspection, however, could have "testimonial" aspects and an incriminating effect since it could be a tacit concession that the documents exist, are in the defendant's possession, and are authentic. *Id.* 465 U.S. at 612–13, 104 S.Ct. at 1242. Therefore, production of the documents could only be compelled if the defendant were granted immunity from the use of any evidence which may be derived from the *act of producing* the papers (*e.g.,* authentication, admission of possession). *Id.* at 616, 104 S.Ct. at 1244. No such protection regarding the *contents* of the documents, however, was required.

Only Justice O'Connor found, at least expressly, that *Doe* "sounded the death knell of *Boyd.*" 465 U.S. at 618, 104 S.Ct. at 1245 (O'Connor, J., concurring). The lower courts, interpreting *Doe,* have expressed diverging opinions regarding that conclusion. The United States Court of Appeals for the Fourth Circuit has held that *Doe* merely reiterated the principle that an individual holding documents on behalf of an artificial entity cannot assert a fifth amendment privilege to protect the contents of these documents. *United States v. (Under Seal),* 745 F.2d 834, 839 (4th Cir.1984), *vacated as moot,* 471 U.S. 1001, 105 S.Ct. 1861, 85 L.Ed.2d 155 (1985). That court found *Boyd* to be very much alive and held that the fifth amendment prevents the government from subpoenaing an individual's incriminating papers that are held by him in an individual, as opposed to representative, capacity. *Id.* at 840. On the other hand, in implicit agreement with Justice O'Connor, the Ninth Circuit has taken the view that, after *Doe,* the contents of documents are not protected by the fifth amendment, regardless of whether the documents are characterized as business or personal, so long as the creation of the documents was not compelled. *In re Grand Jury Proceedings on February 4, 1982,* 759 F.2d 1418 (9th Cir.1985).[3] In a

---

**3.** This court, in the case of *In re Kave,* 760 F.2d 343, 355 (1st Cir.1985), stated that "[t]he compelled production of [personal] documents is

prohibited only if there are testimonial aspects to the act of production itself." While that opinion did not imply any possible distinction

somewhat more restrained approach, the Second Circuit has taken the view that *Doe* held only that the fifth amendment does not provide a privilege for the contents of voluntarily prepared *business* records and that the Supreme Court has not reached the question of whether the privilege protects the contents of intimate, non-business documents. *In re Proceedings Before the August 6, 1984 Grand Jury*, 767 F.2d 39, 41 (2d Cir.1985).

We recognize that no other justice used the opportunity presented in *Doe* to join Justice O'Connor in an explicit final burial of *Boyd*.[4] Nonetheless, *Fisher, Andresen,* and *Doe* clearly signal that *Boyd*, at best, must be read in a very limited fashion. If the contents of private papers are protected at all—a matter as to which we express no opinion today—"it is only in rare situations, where compelled disclosure would break 'the heart of our sense of privacy.'" *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.) (citing *Doe*, 465 U.S. at 619 n. 2, 104 S.Ct. at 1245 n. 2 (Marshall, J., concurring in part)), *cert. dismissed*, 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985); *cf. United States v. Katin*, 109 F.R.D. 406, 406 (D.Mass.1986) (privacy interests protected by fifth amendment prevent compelled production of intimate personal papers such as diaries or drafts of letters or essays).

Appellant has presented no evidence to rebut the government's substantial showing that the records it seeks are not intimate personal papers. A former associate of appellant has testified at length that the notebooks were kept as records of regularly conducted activity of the LaRouche security staff. The two notebooks already in possession of the government show no "highly personal" entries. An inspection of these documents confirms the district court's finding that they were maintained for the purpose of briefing, consultation, and planning within the LaRouche organization. Indeed, the district court itself stated that the notebooks "are records of a regularly conducted activity." Even if the fifth amendment protects the contents of some voluntarily prepared personal papers, it certainly does not protect organizational records of this type.

### Adverse Spousal Privilege

Appellant's argument on this issue is based on the assumption that the subpoenaed documents are "testimonial." As the preceding discussion indicates, however, appellant's assumption is erroneous. Whether a person's actions are "testimonial" for purposes of the adverse spousal privilege generally is determined by whether those actions would be "testimonial" under the fifth amendment if they were used against that person. *See, e.g., In re Grand Jury Proceedings (Rovner)*, 377 F.Supp. 954, 955 (E.D.Penn.) ("It is inconceivable that an act which would not make one a witness against himself would make him a witness against another"), *aff'd*, 500 F.2d 1400 (3d Cir.1974), *cert. denied*, 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 802 (1975); *see also United States v. McKeon*, 558 F.Supp. 1243 (E.D.N.Y.1983) (compelled production of handwriting exemplars which incriminate spouse non-testimonial). Since we have held that the contents of the voluntarily compiled documents sought by the government are not testimonial for purposes of the fifth amendment, it necessarily follows that they are not testimonial under the adverse spousal rule.

Only the act of producing the documents is testimonial in nature. The government correctly concedes that this act cannot be used *"at all"* against appellant's wife. The contents of these notebooks, however, may be used as evidence against both appellant and his wife.

The order of the district court in Appeal No. 87–2031 is *affirmed*. Appeal No. 87–1954 is *dismissed as moot*.

---

between "intimate" personal papers and other types of documents, we note that the papers involved in that case, as in *Doe*, were business records.

4. With the same circumspection, the Court in *Doe* specifically noted that the records in question were business records and of a less personal nature than the documents at issue in *Fisher*. As noted above, the Court in *Fisher* expressly reserved decision on whether truly private papers may receive some protection under the fifth amendment.