**In re GRAND JURY PROCEEDINGS
(Howard P. TANGER)**

**M.B.D. No. 97–10340.**

United States District Court,
D. Massachusetts.

July 9, 1997.

Robert D. Keefe, Hale & Dorr, Boston, MA, for Howard P. Tanger.

Thomas N. Burrows, Deputy Chief, Child Exploitation and Obscenity Section, U.S. Department of Justice, Washington, DC, for U.S.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

The matter before the Court is a Motion for an Order to Show Cause pursuant to 28 U.S.C. § 1826 (Recalcitrant witnesses), Fed. R.Crim.P. 17(g) (Contempt), and Fed. R.Crim.P. 42(b) (Criminal contempt). Fed. R.Crim.P. 42(b) provides that notice of criminal contempt may proceed by a motion for an order to show cause. Specifically, the United States of America is moving for an order to show cause why Howard P. Tanger (Tanger), the target of a grand jury investigation, should not be held in civil and criminal contempt for his failure to produce a self-authored affidavit in his possession pursuant to a grand jury subpoena.

Mr. Tanger is the target of a grand jury investigation into possible violations of the federal child pornography statutes. On No-

vember 26, 1996, Deborah Ash, M.D. (Ash) removed approximately 100 internet images from Tanger's bedroom. Later that morning, Ash telephoned Tanger and informed him that the internet images constituted "child pornography," and, as a result, she had turned them over to the "proper legal authorities." On or about December 4, 1996, one of Tanger's attorneys wrote to Ash concerning her removal of the images from Tanger's home. In the letter, Tanger's attorney[1] made reference to the fact that Tanger had provided counsel a "sworn affidavit" that he had never "solicited, paid for, photographed, disseminated, promoted or participated in child pornography." On or about June 5, 1997, Attorney Robert Keefe accepted service of a grand jury subpoena on behalf of Tanger. The subpoena *duces tecum* required Tanger to produce the "sworn affidavit" referenced in the December 4, 1996 letter to Ash. Tanger has refused to produce the "sworn affidavit," asserting his Fifth Amendment privilege, and, as a result, the government filed the pending motion.

■■■ The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment privilege not only covers answers that would, in themselves, support a conviction, it also covers answers that would furnish a link in the chain of evidence needed to prosecute, as well as answers which might lead to other evidence that could be used in a criminal prosecution against the witness. *In re Kave,* 760 F.2d 343, 354 (1st Cir.1985) (internal citations omitted). The protective umbrella of the Fifth Amendment encompasses matters related to both civil and criminal contempt. *Id.* The simple question before the Court is whether the witness Tanger has a valid Fifth Amendment privilege to refuse to produce the "sworn affidavit."

The principle that the Fifth Amendment protects the contents of private papers originated over one hundred years ago in *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). The privilege was long

believed to extend to personal business records and personal documents containing more intimate information about an individual's private life. *In re Steinberg,* 837 F.2d 527, 528 (1st Cir.1988) (quoting *Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182–83, 40 L.Ed.2d 678 (1974)). In the last 25 years, the firm foundation of the Boyd Doctrine, as the above rule of law came to be called, has suffered severe erosion.

Clearly, as a result of the Supreme Court's decisions in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Fifth Amendment no longer protects the contents of personal business records in an individual's possession. These two cases hold that the Fifth Amendment protects against the compulsory surrender of "(1) personal business records, (2) in the possession of a sole proprietor or practitioner, (3) only with respect to the testimonial act implicit in the surrender itself." *In re Kave,* 760 F.2d at 356. The Supreme Court, although making substantial inroads on the Boyd Doctrine, has not ruled that *Boyd v. United States* is not the law of the land concerning strictly personal, non-business documents. *See In re Steinberg,* 837 F.2d at 528–530. The Court of Appeals for the First Circuit, as recently as 1996, has recognized that the privilege against self-incrimination applies to the contents of private papers "in rare situations where compelled disclosure would break the heart of our sense of privacy." *United States v. Feldman,* 83 F.3d 9, at 14 (1st Cir.1996) (quoting *In re Grand Jury Subpoena,* 973 F.2d 45, 51 (1st Cir.1992)).

■■■ Testimony, in order to be privileged, must have a real and appreciable tendency, not a remote one, to incriminate a witness. *In re Kave,* 760 F.2d at 354. To sustain the privilege, all that need be shown is that a response is potentially incriminating. *Id.* at 355. It is readily apparent that the contents of the "sworn affidavit" have the potential to incriminate Tanger. Here we have an affidavit, a personal statement, writ-

---

1. The Court notes that there is also a claim of attorney-client privilege, but it need not reach this issue.

ten at the request of an attorney whom Tanger had retained as a result of the actions of Ash, after she had notified the "proper legal authorities." This "sworn affidavit" is not a business record nor a day calendar created prior to the onset of a criminal investigation; rather, it was prepared in response to a criminal investigation. Not only is the "sworn affidavit" potentially inculpatory concerning the federal child pornography statutes, the "sworn affidavit" in and of itself is potentially perjurious and the act of production could lead to a separate and distinct charge of perjury. The threat of self-incrimination is real and substantial.

■ "The privilege against self-incrimination is one of the most important constitutional principles inherited from the common law." *Id.* at 353. "It derives from the common law's *nomo tenetur seipsum accusore* and was aimed at preventing the recurrence of Star Chamberlike proceedings." *Id.* "The purpose of the Fifth Amendment is to protect an individual's privacy and his dignity or integrity as a person." *United States v. Katin*, 109 F.R.D. 406, 407 (D.Mass.1986) (citing *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981, 984 (2d Cir.1983)). To hold that a person must divulge self-incriminating statements merely because they chose to write them down rather than keep them sealed in their head would be contrary to the personal protection our forefathers intended to be vested in the Fifth Amendment. *See, In re Grand Jury Subpoena Duces Tecum*, 1 F.3d 87, 96 (2d Cir.1993) (Altimari, C.J., dissenting).

It is the judgment of the Court that the compelled production of this potentially incriminating personal statement, prepared in the privacy of a lawyer's office, "would break the heart of our sense of privacy," and would completely eviscerate that privilege which embodies the citizen's historic protection against the power of government to force a person to incriminate himself by his own words. What little that is left of the Boyd Doctrine dictates that the witness Tanger has a valid Fifth Amendment privilege in this case. The United States' Motion for an Order to Show Cause is denied.

SO ORDERED.