**In re GRAND JURY SUBPOENA DUCES TECUM DATED OCTOBER 29, 1992.**

**UNITED STATES of America, Appellant,**

v.

**John DOE, Appellee.**

**No. 1497, Docket 93–1070.**

United States Court of Appeals,
Second Circuit.

Argued May 18, 1993.

Decided July 21, 1993.

Scott A. Edelman, Asst. U.S. Atty., New York City (Roger S. Hayes, U.S. Atty., S.D.N.Y., John W. Auchincloss II, Asst. U.S. Atty., of counsel), for appellant.

Jed S. Rakoff, New York City (Fried, Frank, Harris, Shriver & Jacobson, John Sullivan, of counsel), for appellee.

John H. Doyle, III, New York City filed a brief on behalf of New York Council of Defense Lawyers as amicus curiae.

Before: LUMBARD, CARDAMONE, and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

The government appeals from an order entered on January 7, 1993 in the Southern District of New York, Pollack, J., denying its motion to compel John Doe to comply with a grand jury subpoena duces tecum dated October 29, 1992. The subpoena commanded Doe to produce "[t]he original version of any diary or calendar for the year 1988, a copy of which has been produced to the SEC." On appeal, the government argues that the court erred in denying its motion to compel because: (1) the Fifth Amendment does not protect the contents of voluntarily prepared, non-business documents such as Doe's calendar; (2) Doe's act of producing the calendar would not constitute compelled testimonial self-incrimination; and (3) enforcement of the subpoena is not barred by alleged governmental misconduct. Because we agree, we reverse.

In 1989, the SEC was investigating possible violations of the federal securities laws by Doe and others. The investigation focused in part on the trading of securities by Doe in his personal brokerage accounts. Pursuant to that investigation, Doe was served with a subpoena dated October 24, 1989, demanding that he appear before the SEC and produce various documents, including his daily calendar for 1988. That calendar is a breast-pocket appointment book which Doe used to record appointments, social engagements, chores, phone numbers, and other reminders.

On January 10, 1990, Doe appeared before the SEC and, on the advice of counsel, responded to the subpoena by asserting his Fifth Amendment privilege against self-incrimination. Thereafter, however, Doe, through new counsel, agreed to withdraw his prior invocation of the Fifth Amendment and comply with the SEC's requests. In return, the SEC agreed, *inter alia,* to: withdraw the subpoena previously served on Doe; agree with Doe as to the timing and scope of future

document requests; and extend the time for Doe to respond to any recommendation it might make for enforcement action against him.

On December 6 and 7, 1990, Doe appeared before the SEC in New York and testified about the trading of securities in his personal brokerage accounts. Thereafter, on December 20, 1990, the SEC requested that Doe produce various documents, including "[d]esk calendars, diaries and appointment books kept by him or on his behalf."

On January 28, 1991, Doe complied with that request by producing a number of documents, including a photocopy of the calendar. The documents were submitted with a cover letter from Doe's counsel which stated in part:

> We claim that all materials provided to the Staff during the course of this investigation, including this letter and the documents transmitted herewith, are entitled to confidential treatment. Because such documents constitute investigatory records obtained by the Commission in connection with a potential law enforcement proceeding, they certainly are subject, at least at the present, to the exemption from mandatory disclosure under ... the Freedom of Information Act * * * as well as the protections available under the Privacy Act of 1974....
>
> Accordingly, we expect that all copies of documents produced in connection with the Staff's investigation, including this letter, will be kept in a non-public file and that access to them by any third party not a member of the Commission or its Staff will be denied.

Each page of every document produced by Doe was stamped:

> This document is provided to the United States Securities and Exchange Commission solely for its use, and neither the document nor its contents may be disclosed to any other person or entity, pursuant to a claim of confidentiality made by letter dated JAN 28 1991.

In June 1991, Doe again appeared before the SEC and testified about the documents he had produced in January. In particular, Doe was questioned about calendar entries for March 7, 1988, a date of particular importance in the SEC's investigation.

After the SEC concluded its investigation, it brought a civil lawsuit against Doe and others alleging participation by Doe in insider trading.

While the SEC's investigation was pending, the U.S. Attorney's Office for the Southern District of New York requested access to documents produced by Doe. On March 5, 1991, the SEC granted that request and provided the U.S. Attorney's Office with a copy of the calendar. Upon examining it, the government became suspicious that entries in the original version of the calendar had been "whited-out" with "liquid paper" before it was copied and produced to the SEC. Accordingly, on October 29, 1990, a grand jury, which had been investigating possible perjury and obstruction of justice by Doe and others, issued a subpoena commanding Doe to produce the original version of the calendar.

Doe informed the government that, on the basis of his Fifth Amendment privilege against self-incrimination, he would refuse to produce the calendar. The government then moved to compel Doe to comply with the subpoena. At a November 12, 1992 conference before Judge Pollack, the government advised the court and Doe's counsel of its suspicion that the calendar had been altered, explaining that it wanted to perform physical tests on the original version of the calendar to reveal any entries that had been whited-out. Doe maintained that the subpoena was unenforceable because: (1) the contents of the calendar, as well as the act of producing it, were protected by the Fifth Amendment; and (2) the SEC had breached a confidentiality agreement with him by providing a copy of the calendar to the U.S. Attorney's Office.

Doe's counsel then permitted the government to view the original version of the calendar. The government's examination confirmed its suspicion that numerous entries had been whited-out, including entries for the critical date of March 7, 1988.

At a hearing on January 7, 1993, Judge Pollack denied the government's motion to compel, stating:

> The diary is a [sic] intimate personal document; the content of the original document as originally written or revised was not published to anyone; the disclosure of a purported copy to the SEC was not a publication of the original; the original document was not voluntarily disclosed to the SEC or to the Assistant United States Attorney. The original document is subject to the privilege of the Fifth Amendment in its original and its present altered (if it was) form.[1]

This appeal followed.

### A. Contents–Based Privilege

Doe maintains that the contents of the calendar are protected from compelled production by the Fifth Amendment's Self-incrimination Clause, which provides, "No person ... shall be compelled in any criminal case to be a witness against himself." While we have previously left undecided the question of whether the Fifth Amendment "protects the contents of private papers that are not business documents," *In re Proceedings Before August 6, 1984 Grand Jury*, 767 F.2d 39, 41 (2d Cir.1985), we now rule that it does not.

In arguing for a contents-based privilege, Doe relies principally upon *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), which involved a civil forfeiture proceeding against two partners charged with importing glass without paying the prescribed duty. Over the partners' objections, the government obtained a court order requiring them to produce the invoice for the glass. After the invoice was admitted at trial, the glass was ordered forfeited. The Supreme Court reversed, holding that the order violated both the Fourth and Fifth Amendments.

In so ruling, the Court concluded that the Fourth Amendment applied to court orders in the nature of subpoenas duces tecum in the same manner that it applied to search warrants, and that the government could not, consistent with the Fourth Amendment, seize a person's documents as evidence unless it had a superior proprietary interest in them. *Id.* at 622–24, 6 S.Ct. at 527–29. The Court also held that a defendant in a criminal or forfeiture case could not be compelled to produce certain evidentiary items without violating the Fifth Amendment, stating, "[A] compulsory production of the private books and papers of the owner of goods sought to be forfeited ... is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution."[2] *Id.* at 634–35, 6 S.Ct. at 534–35.

Several aspects of the *Boyd* decision did not endure.[3] Nevertheless, the pronounce-

---

1. For purposes of this appeal, we do not question the district court's characterization of Doe's calendar as an "intimate personal document." That conclusion appears to rest, at least in part, on the determination of factual issues, and therefore it will not be overturned because we do not find it has no support in the record. *See United States v. Doe*, 465 U.S. 605, 614, 104 S.Ct. 1237, 1243, 79 L.Ed.2d 552 (1984).

2. As one commentator has noted:

> The conceptual basis for [*Boyd's* protection of the contents of private papers] was never entirely clear, but seemed to rest upon the combined effect of the Fifth Amendment's privilege and the Fourth Amendment's protection against unreasonable searches and seizures. It was regarded as related to, and perhaps part of, the Fourth Amendment's "mere evidence" rule, a prohibition against the seizure and use of items that were neither contraband nor instruments or fruits of crime but of value to the prosecution because they were evidence that a crime was

committed or that a particular person committed it.

1 *McCormick On Evidence* § 127, at 464 (4th ed. 1992).

3. As the Supreme Court has observed:

> The application of the Fourth Amendment to subpoenas was limited by *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), and more recent cases. See, *e.g.*, *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Purely evidentiary (but "non-testimonial") materials, as well as contraband and fruits and instrumentalities of crime, may now be searched for and seized under proper circumstances, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Also, any notion that "testimonial" evidence may never be seized and used in evidence is inconsistent with *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Osborn v. United States*, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); and *Berger v. New York*, 388 U.S. 41,

ment in *Boyd* that the Fifth Amendment protects against the compelled production of private papers often appeared as dictum in later Supreme Court opinions. *See, e.g., Wilson v. United States,* 221 U.S. 361, 377, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911); *United States v. White,* 322 U.S. 694, 698–99, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944); *Schmerber v. California,* 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908 (1966); *Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). In a series of decisions beginning with *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579–80, 48 L.Ed.2d 39 (1976), however, the Court raised serious doubt as to the continued validity of that pronouncement.

In *Fisher,* the Court ruled that taxpayers' Fifth Amendment privileges against self-incrimination did not shield them or their attorneys from complying with IRS summonses directing the production of tax records prepared by the taxpayers' accountants. Rejecting the taxpayers' reliance on *Boyd,* the Court noted that because much of *Boyd's* doctrine had "not stood the test of time," *id.* at 407, 96 S.Ct. at 1579, "the prohibition against forcing the production of private papers has long been a rule searching for a rationale consistent with the proscriptions of the Fifth Amendment against compelling a person to give 'testimony' that incriminates him." *Id.* at 409, 96 S.Ct. at 1580.

The Court also emphasized that "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating." *Id.* at 408, 96 S.Ct. at 1579 (emphasis omitted). Since the accountants' papers were not prepared by the taxpayers, "they contain[ed] no testimonial declarations by [them]." *Id.* at 409, 96 S.Ct. at 1580. And since "the preparation of all of the papers

sought ... was wholly voluntary, ... they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else." *Id.* at 409–10, 96 S.Ct. at 1580 (footnote omitted). The Court thus concluded that the summonses were enforceable unless the act of producing the documents was itself subject to a valid Fifth Amendment privilege. *Id.* at 410, 96 S.Ct. at 1580–81.

The *Fisher* Court also rejected the notion, which it traced to *Boyd,* that the Fifth Amendment provides any general protection of privacy:

> Within the limits imposed by the language of the Fifth Amendment, which we necessarily observe, the privilege truly serves privacy interests; but the Court has never on any ground, personal privacy included, applied the Fifth Amendment to prevent the otherwise proper acquisition or use of evidence which, in the Court's view, did not involve compelled testimonial self-incrimination of some sort.
>
> \* \* \* \* \* \*
>
> We cannot cut the Fifth Amendment completely loose from the moorings of its language, and make it serve as a general protector of privacy—a word not mentioned in its text and a concept directly addressed in the Fourth Amendment. We adhere to the view that the Fifth Amendment protects against "compelled self-incrimination, not [the disclosure] of private information." *United States v. Nobles,* 422 U.S. 225, 233 n. 7, 95 S.Ct. 2160, 2167 n. 7, 45 L.Ed.2d 141 (1975).

*Id.* at 399–401, 96 S.Ct. at 1575–76 (alteration in original) (footnote omitted). Nevertheless, the Court expressly declined to decide whether the Fifth Amendment would protect against the disclosure of "private papers" such as a taxpayer's "own tax records in his possession." *Id.* at 414, 96 S.Ct. at 1582.

In *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), decided

---

87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), approving the seizure under appropriate circumstances of conversations of a person suspected of crime.

 \* \* \* \* \* \*

Furthermore, despite *Boyd,* neither a partnership nor the individual partners are shielded from compelled production of partnership records on

self-incrimination grounds. *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

*Fisher v. United States,* 425 U.S. 391, 407–08, 96 S.Ct. 1569, 1579–80, 48 L.Ed.2d 39 (1976) (footnote omitted).

shortly after *Fisher*, the Court reiterated that any self-incrimination analysis must focus on the voluntariness of the communication at issue. Rejecting a claim that the Fifth Amendment was violated by the use against a criminal defendant of personal business records seized pursuant to a lawful search, the Court reasoned that because the records had been "voluntarily committed to writing," and because the defendant had not been forced to produce or authenticate them, use of the records did not compel the defendant to incriminate himself. *Id.* at 473, 96 S.Ct. at 2944–45.

Then in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Court reaffirmed its holding in *Fisher* and answered in the negative the question it had left open in that case, ruling that the Fifth Amendment does not protect the contents of an individual's business records in his own possession. Emphasizing that the Amendment "protects the person asserting the privilege only from *compelled* self-incrimination," *id.* at 610, 104 S.Ct. at 1241, the Court held in substance that because the documents at issue were prepared voluntarily, they " 'cannot be said to contain compelled testimonial evidence' in and of themselves." *Id.* at 612 n. 9, 104 S.Ct. at 1242 n. 9 (citation omitted). Although the documents at issue were business records, the Court stated broadly, "If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." *Id.* at 612 n. 10, 104 S.Ct. at 1242 n. 10.

In a separate concurring opinion, Justice O'Connor wrote:

I write separately . . . just to make explicit what is implicit in the analysis of [the Court's] opinion: that the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind. The notion that the Fifth Amendment protects the privacy of papers originated in *Boyd v. United States*, 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746] (1886), but our decision in *Fisher v. United States*, 425 U.S. 391 [96 S.Ct. 1569, 48 L.Ed.2d 39] (1976), sounded the death knell for *Boyd.* "Several of *Boyd's* express or implicit dec-

larations [had] not stood the test of time," 425 U.S. at 407 [96 S.Ct. at 1579], and its privacy of papers concept "ha[d] long been a rule searching for a rationale . . . ." *Id.* at 409 [96 S.Ct. at 1580]. Today's decision puts a long overdue end to that fruitless search.

*Id.*, 465 U.S. at 618, 104 S.Ct. at 1245 (second and third alterations in original). While no other justice joined in Justice O'Connor's opinion, the decision in *Baltimore Dep't of Social Servs. v. Bouknight*, 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990), suggests that a majority of the Court now agrees with her position.

In *Bouknight*, the Court ruled that the Fifth Amendment did not shield a mother from complying with a juvenile court order directing her to produce her infant son. Citing Justice O'Connor's *Doe* concurrence, the Court stated that "a person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." *Id.* at 555, 110 S.Ct. at 905. The Court thus concluded that any Fifth Amendment privilege would have to arise from the act of production, because "[w]hen the government demands that an item be produced, 'the only thing compelled is the act of producing the [item].' " *Id.* at 554–55, 110 S.Ct. at 905 (alteration in original) (quoting *Fisher*, 425 U.S. at 410 n. 11, 96 S.Ct. at 1580 n. 11).

Notwithstanding these recent decisions, Doe contends that *Boyd* still controls this case, compelling the conclusion that the Fifth Amendment protects the contents of voluntarily prepared, non-business documents such as the calendar. We disagree.

First, *Boyd* concerned business documents, and therefore its declarations regarding the Fifth Amendment's protection of non-business documents were dicta. While the dicta of the Supreme court merits our deference, we also heed Chief Justice Marshall's admonition that:

general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment

in a subsequent suit, when the very point is presented for decision. . . .

*Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821), *quoted in Donovan v. Red Star Marine Servs.,* 739 F.2d 774, 782 (2d Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1355, 84 L.Ed.2d 377 (1985).

■ Second, the Supreme Court's more recent opinions indicate that *Boyd's* foundations have eroded. The Court no longer views the Fifth Amendment as a general protector of privacy or private information, but leaves that role to the Fourth Amendment. *See Fisher,* 425 U.S. at 401, 96 S.Ct. at 1576; *see also Doe,* 465 U.S. at 610–11 n. 8, 104 S.Ct. at 1240–42 n. 8. Self-incrimination analysis now focuses on whether the creation of the thing demanded was compelled and, if not, whether the act of producing it would constitute compelled testimonial communication. *See Doe,* 465 U.S. at 612, 104 S.Ct. at 1242; *Andresen,* 427 U.S. at 473, 96 S.Ct. at 2744–45; *Fisher,* 425 U.S. at 409–410, 96 S.Ct. at 1580–81. Further, the *Bouknight* Court's citation of Justice O'Connor's *Doe* concurrence indicates that this analysis applies regardless of "the contents or nature of the thing demanded." 493 U.S. at 555, 110 S.Ct. at 905.

Third, the three courts of appeals that have considered this question have all concluded that the Fifth Amendment does not protect the contents of voluntarily prepared documents, business or personal. *See United States v. Wujkowski,* 929 F.2d 981, 983, 985 (4th Cir.1991) (contents of appointment books and records relating to vacation home not privileged under Fifth Amendment), *aff'd after remand sub .nom. United States v. Stone,* 976 F.2d 909 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1843, 123 L.Ed.2d 467 (1993); *In re Sealed Case,* 877 F.2d 83, 84 (D.C.Cir.1989) (privilege "does not cover the *contents* of any voluntarily prepared records, including personal ones"), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 834 (1990); *In re Grand Jury Proceedings,* 759 F.2d 1418, 1419 (9th Cir.1985) (contents of business and personal documents are not privileged "in the absence of some showing that creation of the documents was the product of compulsion").

For these reasons, we conclude that because Doe voluntarily prepared the calendar, its contents are not protected by the Fifth Amendment.

## B. *Act of Production Privilege*

■ While the contents of voluntarily prepared documents are not privileged, the act of producing them in response to a subpoena may require incriminating testimony in two situations: (1) "if the existence and location of the subpoenaed papers are unknown to the government"; or (2) where production would "implicitly authenticate" the documents. *United States v. Fox,* 721 F.2d 32, 36 (2d Cir.1983) (citations omitted). Because neither of these situations exists here, Doe has no act of production privilege.

■ Production may not be refused "[i]f the government can demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents." *In re Grand Jury Subpoena Duces Tecum,* 616 F.Supp. 1159, 1161 (E.D.N.Y. 1985). Since Doe produced a copy of the calendar to the SEC and testified about his possession and use of it, its existence and location are "foregone conclusion[s]," and his production of the original "adds little or nothing to the sum total of the Government's information." *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581.

Nor would Doe's compliance with the subpoena implicitly authenticate the calendar; his production is not "a necessary link to incriminating evidence contained in [it]." *Fox,* 721 F.2d at 38 (quoting *In re Grand Jury Proceedings United States (Martinez),* 626 F.2d 1051, 1055 (1st Cir.1980)). The government could authenticate the calendar, either in the grand jury or at trial, simply by establishing Doe's prior production of the copy to the SEC and asking the trier of fact to compare the copy and the original. Such a comparison, considered in light of Doe's SEC testimony regarding his use of the calendar, would leave no doubt that the calendar was that described in the subpoena.

Accordingly, because Doe's compliance with the subpoena would require mere "surrender" of the calendar, and not "testimony,"

Doe has no act of production privilege. *See Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581.

## C. *Governmental Misconduct*

 The grand jury plays a "special role in insuring fair and effective law enforcement." *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). As the Supreme Court has emphasized, that role "necessarily includes an investigatory function with respect to determining whether a crime has been committed and who committed it." *Branzburg v. Hayes*, 408 U.S. 665, 701, 92 S.Ct. 2646, 2666–67, 33 L.Ed.2d 626 (1972). Therefore, the grand jury's "investigative powers are necessarily broad," and "the longstanding principle that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings." *Id.* at 688, 92 S.Ct. at 2660 (citations omitted).

Against this broad power, Doe contends that the subpoena may not be enforced because, by providing the calendar to the U.S. Attorney's Office, the SEC breached an agreement not to disclose to third parties any documents produced by him. Therefore, Doe argues, the subpoena for the original version of the calendar should not be enforced "because it is the tainted fruit of a breach of the conditions under which a copy of the [calendar] was made available to the SEC." We are not persuaded.

We seriously question whether Doe actually procured an agreement from the SEC not to disclose the calendar to the U.S. Attorney's Office. The alleged agreement upon which Doe relies consists merely of a one-sided request by his attorney for confidential treatment of documents produced. Doe offers no evidence that the SEC agreed to this condition, and the SEC attorney involved denies having done so. Furthermore, such an agreement would conflict with standard SEC practice, reflected on a form provided to Doe's counsel, which states:

> The Commission often makes its files available to other government agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

We need not resolve this issue, however, because even if Doe obtained such an agreement from the SEC, he suffered no prejudice from the SEC's purported breach of it. There can be no doubt that had the SEC refused a request by the U.S. Attorney's Office for a copy of the calendar, the grand jury would have subpoenaed it. Such a subpoena could have been directed either to the SEC or to Doe's co-defendant in the SEC's civil suit, who had obtained a copy of the calendar from the SEC during discovery. Doe has not shown that the grand jury would have been unable to obtain a copy of the calendar from either of those sources.[4]

We therefore conclude that Doe suffered no prejudice in this proceeding from the SEC's alleged wrongful disclosure of the calendar, and the subpoena is not rendered unenforceable by governmental misconduct.

Reversed.

---

**4.** Doe's reliance on *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir.1979) is misplaced. There, we affirmed a district court order denying the government's informal request for transcripts of depositions taken in a private civil action which were subject to a protective order approved by the court pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. In so ruling, we reasoned that the interest in the enforcement of Rule 26(c) orders was sufficient to outweigh the government's interest in obtaining information by means of an informal document request. *Id.* at 295–96.

Here, by contrast, the government has not requested Doe's calendar informally, but through a grand jury subpoena. Further, documents produced by Doe to the SEC are not subject to a Rule 26(c) protective order, but merely to an alleged agreement of confidentiality. On this record, we cannot say that the interests underlying enforcement of that agreement are sufficient to trump the grand jury's interest in obtaining evidence of possible criminal conduct by Doe.

ALTIMARI, *Circuit Judge,* dissenting:

Because I believe that the Supreme Court's pronouncement in *Boyd v. United States,* 116 U.S. 616, 634–35, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) that "a compulsory production of the private books and papers of the owner of goods sought to be forfeited ... is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution" remains valid, I respectfully dissent.

The proposition in *Boyd* regarding the Fifth Amendment protection of private papers has been repeated in a number of subsequent opinions. *See Wilson v. United States,* 221 U.S. 361, 377, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911); *United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944); *Couch v. United States,* 409 U.S. 322, 330, 93 S.Ct. 611, 616–17, 34 L.Ed.2d 548 (1973); *Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). The majority maintains, however, that *Boyd's* foundations have been eroded by more recent Supreme Court decisions. Admittedly, certain elements of the *Boyd* decision have been overturned. *See Warden v. Hayden,* 387 U.S. 294, 301–302, 87 S.Ct. 1642, 1647–48, 18 L.Ed.2d 782 (1967) (rejecting parts of *Boyd's* holding regarding the Fourth Amendment). The *Boyd* pronouncement at issue here, however, has never been expressly overruled, nor has a majority of the Court indicated that it would so rule in a case dealing with personal papers.

The Supreme Court cases that the majority relies upon to support its contentions are distinguishable. In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the government sought to compel the production of documents prepared by accountants that related to their clients' tax returns. In the case at bar, the government seeks to compel production of the contents of defendant's day calendar, a document that even the majority agrees is an "intimate personal document." In *Fisher,* although the Court concluded that the documents must be produced, the Court specifically stated that because the case before it did not involve the witnesses's private papers, it was not resolving the question of whether such documents could be compelled. *See id.* at 414, 96 S.Ct. at 1582 ("Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his 'private papers.'"). Accordingly, the Court's analysis in *Fisher* relating to the "act of production privilege" and the voluntariness of producing the document does not necessarily relate to private papers. The majority's reference to *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), another case involving business records, is therefore equally off the mark.

In *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), yet another case dealing with the compelled production of business documents, the Court focused on whether the document was voluntarily compiled. *See id.* at 612 n. 10, 104 S.Ct. at 1242 n. 10. Because *Doe,* like *Fisher,* involved business records, it leaves open the question of whether the Court would apply the voluntariness analysis to personal papers. Although Justice O'Connor wrote separately to specifically state that the Fifth Amendment "provides absolutely no protection for the contents of private papers of any kind," *id.* at 618, 104 S.Ct. at 1245, no other Justice joined in her opinion. Moreover, two other Justices wrote separately in order to express their opinions that the Fifth Amendment continued to protect the contents of certain personal documents. *See id.* at 618–19, 104 S.Ct. at 1245–46 (Marshall, *J.* joined by Brennan, *J.,* concurring in part and dissenting in part).

Although the majority admits that Justice O'Connor was not speaking for the Court in *Doe,* it finds that the decision in *Baltimore Dep't of Social Servs. v. Bouknight,* 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990), indicates that a majority of the Court now agrees with her position. *Bouknight,* however, involved the compelled production of a child, not the production of personal papers. I find the two incomparable. The compelled production of a diary, an unpublished, written expression of one's innermost thoughts, forces the involuntary disclosure of the contents of one's mind. The compelled produc-

tion of a child, on the other hand, is in no way its equivalent. A child, although the result of a private experience, is produced precisely to take his or her place in a public world. Therefore, although the Court found that the privilege against testimonial self-incrimination cannot be invoked to prevent the compelled presence of another person, it can still be invoked to prevent the compelled production of a personal diary.

The majority relies on the decisions of three circuits that have concluded that voluntarily prepared personal papers are not protected by the Fifth Amendment. The majority, however, neglects to cite to a decision of the Third Circuit finding that "the fifth amendment protects an accused from government-compelled disclosure of self-incriminating private papers, such as purely personal date books." *In re Grand Jury Proceedings*, 632 F.2d 1033, 1042 (3d Cir.1980). Furthermore, three other circuits, although refusing to decide the matter, have made statements that leave room for some kind of exception for personal papers. *See Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.) (leaving open the possibility that private papers may be protected where compelled disclosure would "break the heart of our sense of privacy") (citations omitted), *cert dismissed*, 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985); *In re Steinberg*, 837 F.2d 527, 530 (1st Cir. 1988) (same); *United States v. Mason*, 869 F.2d 414, 416 (8th Cir.) (same), *cert. denied*, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989). The Eleventh Circuit, also refusing to rule on the continued vitality of *Boyd*, has made reference to the Supreme Court's own reluctance to overrule *Boyd*. *See In re Grand Jury Investigation*, 921 F.2d 1184, 1187 n. 6 (11th Cir.1991). Given these decisions, it seems far from clear that *Fisher* and *Bouknight* have struck the "death knell" for *Boyd* as the majority maintains.

To hold that a person must divulge self-incriminating statements merely because she chose to write them down rather than keep them sealed in her head, is to strip the Fifth Amendment privilege of its intended power. Prying open a personal diary and forcing its writer to reveal her innermost thoughts, however incriminating they may be, would no doubt have been as reprehensible to our forefathers as prying open a person's lips to extract a confession.

In sum, although *Boyd's* continued vitality has been questioned, its pronouncement that personal papers are protected by the Fifth Amendment has never been expressly overruled. Its reasoning should therefore continue to be applied until the Supreme Court directs us to do otherwise. Accordingly, I respectfully dissent.