In re Frank P. HYDE, Appellant.

No. 98 Civ. 5691(BDP).

United States District Court,
S.D. New York.

June 25, 1999.

Richard S. Kanowitz, Todtman, Nachamie, Spizz & Johns, P.C., New York City, for appellant Frank P. Hyde.

Heath S. Berger, Steinberg, Fineo, Berger & Burlant, P.C., Garden City, NY, for appellee Alan J. Helfand, Chapter 7 Trustee.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Appellant Frank P. Hyde appeals a June 16, 1998 decision of the United States Bankruptcy Court for the Southern District of New York (Hardin, J.) denying Hyde's motion to quash, on the basis of the "act of production" privilege against self-incrimination, a Rule 2004 subpoena seeking certain business records previously delivered to attorneys retained to represent him in criminal proceedings. *In re Hyde,* 222 B.R. 214 (Bankr.S.D.N.Y.1998). For the reasons stated below, the decision of the Bankruptcy Court is reversed and the subpoena is quashed.

## BACKGROUND

In January 1996, Frank P. Hyde, a licensed accountant, started a professional corporation, called "Frank Hyde, PC." That company provided the same accounting services, to substantially the same clients, as Hyde previously had provided under his own name, Frank P. Hyde. Hyde also operated under the name of Finax Trading ("Finax"), a business separate from either Frank Hyde, P.C. or Frank P. Hyde. For tax purposes, Hyde listed Finax on Schedule C of his personal return, separate from his accounting profession. In his bankruptcy schedules, Hyde listed an asset called "Finax Trading Loans," which advanced loans to various individuals under the name of Finax. On February 20, 1997, in an examination pursuant to Bankruptcy Rule 2004, Hyde cited his Fifth Amendment privilege in declining to testify as to how money came into Finax. He did, however, state that about thirty people, for whom Hyde acted as their personal accountant, invested in Finax Trading Loans.

Prior to July 1, 1996, Hyde retained the law firm of Newman & Schwartz to represent him with respect to a criminal investigation into Finax. Newman & Schwartz hired a certified public accountant, Neil Roth, to perform forensic accounting services in connection with the legal services provided to Hyde. Hyde delivered all of his books and records concerning Finax (the "Finax documents") to Newman & Schwartz, which Newman & Schwartz in turn delivered to Roth. Hyde retained possession of the books and records for Frank Hyde, P.C., and Frank P. Hyde.

Before Frank Hyde started his professional corporation, bankruptcy proceedings had been commenced against him. On December 13, 1995, an involuntary petition under Chapter 11 of the Bankruptcy Code was filed in the United States Bankruptcy Court for the Southern District of New York against Frank Hyde. An order for relief was entered on Hyde's consent on March 1, 1996. On April 24, 1996 and May 29, 1996, Hyde testified at meetings of creditors held pursuant to 11 U.S.C. § 341(a). At those meetings, Hyde asserted his Fifth Amendment privilege against self-incrimination in response to certain questions. On June 19, 1996, the Bankruptcy Court granted the United States Trustee's motion to convert Hyde's Chapter 11 case to a Chapter 7 case. On September 12, 1996, Alan J. Helfand, Esq. was elected Chapter 7 Trustee.

On January 9, 1997, the Bankruptcy Court issued an *ex parte* order pursuant to Bankruptcy Rule 2004 authorizing counsel for the Trustee to subpoena the debtor for testimony and for the production of documents relating to his assets and business activities. On February 3, 1997, Hyde was served with a subpoena for a Rule 2004 examination and for the production of documents, including Finax documents. On February 20, 1997, Hyde appeared with counsel for his examination, but failed to produce the requested documents, testifying that they had been delivered to counsel, who had delivered them to Roth.

On February 19, 1997, the Bankruptcy Court entered an *ex parte* order under Rule 2004 that called for the examination of Roth and for his production of the Finax documents. Pursuant to that order, the Trustee's counsel issued a subpoena dated March 18, 1997 to Roth calling for production of "All books and records currently in your possession in regard to Frank P. Hyde, Frank P. Hyde, P.C. or Finax."

■ By a March 31, 1997 order to show cause, Hyde, citing the act of production privilege against self-incrimination, moved for an order quashing the subpoena, which the Trustee opposed.[1] On the return date of the motion, the Bankruptcy Court ordered that the documents at issue be delivered to chambers for an *in camera* inspection. Hyde's counsel delivered the documents and made additional submissions under seal. The Bankruptcy Court held two closed hearings to consider the documents' contents and their potential impact on the criminal investigations involving Hyde, but, in the end, did not conduct an *in camera* review of the documents.

On June 16, 1998 the Bankruptcy Court issued a decision that denied the motion to quash and subsequently entered an order to implement the decision. Hyde then filed his notice of appeal and moved for a stay pending appeal, which the Bankruptcy Court granted.

## DISCUSSION

The District Court functions as an appellate court in reviewing the Bankruptcy Court's decisions. 28 U.S.C. § 158(a), (c); Bankr.Rule 7052 (incorporating Fed. R.Civ.P. 52); Bankr.Rule 8013. Accordingly, this Court will review the Bankruptcy Court's conclusions of law *de novo* and its factual findings under the "clearly erroneous" standard. *In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992).

Hyde argues that the Bankruptcy Court erred in holding that his production of the documents at issue would not implicate the "act of production" doctrine in violation of the Fifth Amendment's privilege against self-incrimination.

■ A threshold question is whether the contents of the subpoenaed documents were privileged under the Fifth Amendment. If the contents were privileged, Hyde need not produce them regardless of whether the act of producing the documents would be independently incriminating. First, as a corporation has no Fifth Amendment privilege, the privilege may not be asserted on the basis of the contents of corporate books and records. *Braswell v. United States,* 487 U.S. 99, 104, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Second, as the Supreme Court has noted, the Fifth Amendment protects only against compelled self-incrimination, and where the preparation of records is voluntary, no element of compulsion is present. *Fisher v. United States,* 425 U.S. 391, 396, 409–10, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Thus, "the Fifth Amendment would not be violated by the fact alone that the papers on their face might incrim-

---

1. Hyde correctly argues that he may assert his Fifth Amendment rights in a bankruptcy proceeding to justify a refusal to provide information otherwise relevant to the administration of an estate. *In re Wright,* 220 B.R. 543, 544 (S.D.N.Y.1998) (citing *In re Martin-Trigona,* 732 F.2d 170 (2d Cir.1984); *In re Salzman,* 61 B.R. 878 (Bankr.S.D.N.Y.1986); *In re Minton Group, Inc.,* 43 B.R. 705 (Bankr. S.D.N.Y.1984)).

inate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications." *Id.* at 409, 96 S.Ct. 1569. Our Court of Appeals has stated that the Fifth Amendment does not protect the contents of voluntarily prepared documents, either business or personal. *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir.1993). Hyde has made no claim that the documents were not voluntarily prepared. The Bankruptcy Court, therefore, correctly determined that the contents of the books and records at issue are not privileged.

Even if the contents of documents are not privileged, however, the act of producing those documents might be. The Supreme Court outlined the contours of the act of production privilege in three cases: *Fisher, supra; United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); and *Baltimore City Dept. of Social Servs. v. Bouknight*, 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990). In *Fisher*, the Internal Revenue Service subpoenaed accountant-prepared papers from attorneys to whom the clients had transferred those papers. When the lawyers declined to comply with the subpoenas, the Government commenced enforcement actions. *Fisher*, 425 U.S. at 395, 96 S.Ct. 1569. The Supreme Court first determined that where the transfer of papers was for the purpose of obtaining legal advice, the attorney-client privilege rendered any documents unobtainable from the client also unobtainable from the attorney. The Court then addressed whether the documents could have been obtained by summons directed to the taxpayer while the documents were in his possession. *Id.* at 405, 96 S.Ct. 1569.

Because the taxpayer asserted his Fifth Amendment privilege against self-incrimination as a bar to enforcement of the summons, the Court reviewed the application of that privilege to the act of producing the documents and determined that in order to implicate the Fifth Amendment, production would have to be both "testimonial" and "incriminating." *Id.* at 410, 96 S.Ct. 1569. The *Fisher* Court, however, found the documents at issue neither testimonial nor incriminating. First, the Court noted that the documents "belong to the accountant, were prepared by him, and are the kind usually prepared by an accountant working on the tax returns of his client." *Id.* at 411, 96 S.Ct. 1569. As a result, the Court stated: "the existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Id.* Consequently, the production of the documents would not be testimonial. Moreover, because the taxpayer did not prepare the papers himself and could not vouch for their accuracy, the documents would not be admissible against the taxpayer without further authenticating testimony; thus, their production would not involve a substantial threat of self-incrimination. *Id.* at 413, 96 S.Ct. 1569. Accordingly, the Court concluded that production of the documents would involve no incriminating testimony within the protection of the Fifth Amendment. *Id.* at 414, 96 S.Ct. 1569.

In *United States v. Doe*, 465 U.S. 605, 611–13, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), after determining that the contents of the documents in question were not privileged, the Supreme Court declined to overturn two lower court decisions that had held that the act of production privilege applied. In a concurring opinion, Justice O'Connor wrote: "I write separately . . . just to make explicit what is implicit in the analysis of [this] opinion: that the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind." *Doe*, 465 U.S. at 618, 104 S.Ct. 1237. Although no other justice joined in Justice O'Connor's concurrence, in her subsequent opinion in *Bouknight*, Justice O'Connor, writing for the majority, cited her *Doe* concurrence and stated: "a

person may not claim the [Fifth] Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." *Id.* at 555, 110 S.Ct. 900.

■ Our Circuit has explained the act of production doctrine as follows:

While the contents of voluntarily prepared documents are not privileged, the act of producing them in response to a subpoena may require incriminating testimony in two situations: (1) "if the existence and location of the subpoenaed papers are unknown to the government"; or (2) where production would "implicitly authenticate" the documents. *United States v. Fox,* 721 F.2d 32, 36 (2d Cir.1983) (citations omitted).

*In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992,* 1 F.3d at 93.

■ In its analysis in this case, the Bankruptcy Court correctly stated that under the Supreme Court's decisions in *Fisher, Doe,* and *Bouknight,* the contents of the documents should not be taken into account in evaluating whether the act of production privilege applied. *See, e.g., In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992,* 1 F.3d at 93 ("Self-incrimination analysis now focuses on whether the creation of the thing demanded was compelled and, if not, whether the act of producing it would constitute compelled testimonial communication.... Further, the *Bouknight* Court's citation of Justice O'Connor's *Doe* concurrence indicates that this analysis applies regardless of 'the contents or nature of the thing demanded.'") (citing *Bouknight,* 493 U.S. at 555, 110 S.Ct. 900) (internal citations omitted).

But because this Court cannot consider the contents of specific documents in determining the applicability of the act of production privilege, once the debtor has invoked the privilege, the Court is required to take at face value the debtor's assertions that the documents are incriminating. This is so because where the contents of documents cannot be considered, the Court cannot require any offer of proof that the documents are, in fact, incriminating. At the same time, however, production of non-incriminating documents would rarely, if ever, implicate the Fifth Amendment. Without taking into account the debtor's assertions of the incriminating nature of the documents, therefore, the act of production privilege would provide no protection against self-incrimination. The question thus becomes whether production itself would be incriminating, without further consideration to the contents of the documents.[2]

■ The first prong in our Circuit's test for the act of production privilege asks whether the existence and location of the subpoenaed documents is known to the Government. *In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992,* 1 F.3d at 93. Along these lines, our Circuit has stated:

Production may not be refused "[i]f the government can demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents." *In re Grand Jury Subpoena Duces Tecum,* 616 F.Supp. 1159, 1161 (E.D.N.Y.1985). Since Doe produced a copy of the calendar to the SEC and testified about his possession and use of it, its existence and location are "foregone conclusion[s]," and his produc-

---

**2.** In addition, the cases Hyde cites in support of this argument were largely decided prior to the Supreme Court's decisions in *Bouknight* and *Doe,* which, when read in conjunction with *Fisher* make clear that a court cannot consider the contents of the documents for which the act of production privilege is sought; the incrimination must stem from production alone. As a result, those cases are

not applicable to the analysis. *See, e.g., United States v. Fox,* 721 F.2d 32, 40 (2d Cir. 1983); *In re Grand Jury Subpoena Duces Tecum April 23, 1981 v. United States,* 657 F.2d 5 (2d Cir.1981); *Jamil v. United States,* 623 F.2d 122 (2d Cir.1980); *Butcher v. Bailey,* 753 F.2d 465 (6th Cir.1985); *United States v. Freidus,* 135 F.R.D. 52 (S.D.N.Y.1991) (examining contents of personal versus business papers).

tion of the original "adds little or nothing to the sum total of the Government's information." *Fisher*, 425 U.S. at 411, 96 S.Ct. 1569.

*Id.* at 93. To this end, the Bankruptcy Court determined that the existence, location, and identification of the Finax documents were a "foregone conclusion." *In re Hyde*, 222 B.R. at 225. While the court acknowledged that "[p]roduction of the Finax documents by Neil Roth would undoubtedly equate to a tacit, testimonial acknowledgment that the Finax Documents exist, that they are within the possession, custody or control of the debtor through his attorneys and forensic accountant and that the documents to be produced are those called for by the subpoena," it observed that this acknowledgment added nothing to what was already open and notorious information as a result of the debtor's testimony under oath in his February 20, 1997 examination. *In re Hyde*, 222 B.R. at 225–26.

On February 20, 1997, Hyde testified that the subpoenaed Finax books and records were at the offices of Newman & Schwartz and their accountant, Neil Roth, and in response to several questions, identified a few additional documents that were within those books and records. (*See* Transcript at pages 4–5, 15, 21, 24, 32, 46, 47, 56.) Hyde argues that because he "never stated what the specific records are, what types of records exist, or what information can be gleaned from the records," (Brief at 25), the existence of the documents could not be a foregone conclusion. This argument misses the point, however, in light of the Supreme Court's direction that the content and nature of the documents for which the act of production privilege is claimed cannot be taken into account. The existence and location of the subpoenaed Finax books and records are, by virtue of the appellant's testi-

mony at his examination, known to the Trustee.

 Under our Circuit's test for the applicability of the act of production privilege, this Court must next determine whether production would "implicitly authenticate" the documents. In *In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992*, our Circuit declined to find that the act of production privilege applied to the production of a daily calendar where a copy of the calendar had already been produced to the Securities and Exchange Commission, stating: "Nor would Doe's compliance with the subpoena implicitly authenticate the calendar; his production is not 'a necessary link to incriminating evidence contained in [it].'" *Id.*, 1 F.3d at 93 (quoting *United States v. Fox*, 721 F.2d 32, 38 (2d Cir.1983)). In this case, the Bankruptcy Court found that the act of production would not authenticate the documents because production would do "no more than communicate the debtor's belief that the Documents in question constitute 'books and records in regard to Finax.'" *In re Hyde*, 222 B.R. at 226–27.

With all deference to the Bankruptcy Court's careful analysis, this Court finds that production of the Finax books and records sought from Hyde's attorneys' accountant could well implicitly authenticate them.[3] The Bankruptcy Court is correct that the simple act of production

> communicates nothing with respect to who prepared the Documents, under what circumstances, why, whether they were sent or received, whether they are genuine, accurate or complete, whether, how or by whom they were used, or anything else.

*In re Hyde*, 222 B.R. at 226. While all of this is true, Hyde's production of the documents could still provide powerfully incriminating evidence—evidence admissible

---

**3.** As noted in the *Fisher* discussion above, any documents that the Trustee could not obtain from Hyde himself could not be obtained from either Hyde's attorneys or their accoun-

tant. This Court's analysis therefore focuses upon whether the documents were obtainable from Hyde himself.

without further authenticating testimony—simply by virtue of the facts that he provided them to the Trustee and compliance with the subpoena established that they were the Finax books and records. *See Fisher*, 425 U.S. at 413, 96 S.Ct. 1569; Fed.R.Evid. 901.

The Bankruptcy Court correctly stated that "[t]he fact (if it is a fact) that the Documents may incriminate the debtor does not make them privileged." *In re Hyde*, 222 B.R. at 227. But because this Court cannot consider the contents of documents in determining the applicability of the act of production privilege, as noted above, once the debtor has invoked his act of production privilege, this Court must assume that the documents are incriminating.

While invocation of the act of production privilege does not automatically mean that it applies, in those cases that did not hold production privileged, there were means of authenticating the documents other than directly through the production sought. *See, e.g., Fisher*, 425 U.S. at 412–13, 96 S.Ct. 1569 (finding no substantial threat of self-incrimination where documents sought were prepared by taxpayer's accountant, and taxpayer could not vouch for their accuracy); *In re Grand Jury Subpoena Dated October 29, 1992*, 1 F.3d at 93 (finding no "necessary link to incriminating evidence" where respondent had previously produced copy of document sought to the SEC and testified about his possession and use of it).

Here, by contrast, there is no claim that the documents sought were prepared by anyone other than Hyde, and there is no evidence that Hyde previously produced copies of the Finax documents to anyone other than counsel and their accountant. As a consequence, Hyde's production of the documents would be a necessary link to any incriminating evidence contained in them. Because Hyde's production of the documents would implicitly authenticate them, the act of production privilege applies.

In determining that the act of production privilege did not apply in this case, the Bankruptcy Court also looked to whether production of the documents would be both testimonial and incriminating, as discussed in *Fisher*.[4] *Fisher*, 425 U.S. 391, 410, 96 S.Ct. 1569. While recognizing that production would be testimonial because it would acknowledge the existence and debtor's possession of the Finax documents, and the fact that the documents produced were those sought in the subpoena, the Bankruptcy Court found that "wholly aside from the contents of the papers produced[,]" *Fisher*, 425 U.S. at 410, 96 S.Ct. 1569, production of the documents would not be incriminating. *In re Hyde*, 222 B.R. at 228. The Bankruptcy Court noted the difficulty in determining whether an act of production would be both testimonial and incriminating, without regard to the content of the document or thing required to be produced, and included the following examples of production that would be both testimonial and incriminating: compliance with a subpoena calling for production of stolen property, compliance with a subpoena calling for production of "counterfeit currency or bonds," compliance with a subpoena calling for production of "the gun used to shoot John Doe." *In re Hyde*, 222 B.R. at 228, n. 8. The court emphasized: "Where the subpoena calls for production of documents, the determination of whether compliance would be incriminating is informed by the language of the subpoena, not the content of the documents demanded." *Id.*

Our problem with the Bankruptcy Court's analysis is that the Government

---

4. While the *Fisher* Court seemed to regard whether the act of production would authenticate the documents as part and parcel of the analysis into whether production would be incriminating, *see Fisher*, 425 U.S. at 412–13, 96 S.Ct. 1569, the Bankruptcy Court addressed the issues of authentication and incrimination separately, and this Court will as well.

could always frustrate a defendant's Fifth Amendment act of production privilege by the simple expedient of making a subpoena's language general or broad. For example, under the Bankruptcy Court's reasoning, compliance · with a subpoena requiring production of "all letters written by [the target of the subpoena] in connection with X transaction," where the transaction involved criminality, would impinge upon the act of production privilege, while a more broadly worded subpoena calling for surrender of all "books, documents, records, and papers, relating to property of the estate"—while requiring production of the same letters—would not be incriminating because the act of production would not be testimonial as to any information other than the letters' existence, the author's possession of them, and the fact that the letters produced were papers relating to property of the estate. *Id.* Along the same lines, a subpoena calling for "all incriminating income records" would implicate the act of production privilege, but a subpoena requesting "all income records" would not.

As the District of Columbia Court of Appeals has noted, however, "the Fifth Amendment's protections cannot depend upon such trivial semantic distinctions." *United States v. Hubbell*, 167 F.3d 552, 581 (D.C.Cir.1999). *Hubbell* analyzed this dilemma in a fashion this Court finds persuasive. There, the court rejected a claim that an admission of the existence or possession of "ordinary" business and financial records can almost never be incriminating, concluding that under that reasoning, "the implicit authentication of documents would only incriminate were a subpoena to be phrased in such a way as to expressly request production of the instruments of criminality. We disagree, as both logic and Supreme Court precedent rebut the claims of any such niggardly interpretation." *Id.*

Further, under the Bankruptcy Court's interpretation of the incrimination prong of the act of production doctrine, the Su-

preme Court's decision in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) would likely have come out the other way. In *Doe*, during the course of an investigation of corruption in the award of county and municipal contracts, a grand jury served five subpoenas on the respondent, Doe. *Id.* at 606, 104 S.Ct. 1237. The subpoenas sought the following:

> The first two subpoenas sought the production of the telephone records of several of respondent's companies and all records pertaining to four bank accounts of respondent and his companies. The subpoenas were limited to the period between January 1, 1977 and the dates of the subpoenas. The third subpoena demanded the production of a list of virtually all the business records of one of respondent's companies for the period between January 1, 1976, and the date of the subpoena. The fourth subpoena sought production of a similar list of business records belonging to another company. The final subpoena demanded production of all bank statements and cancelled checks of two of respondent's companies that had accounts at a bank in the Grand Cayman Islands.

*Doe*, 465 U.S. at 607, 104 S.Ct. 1237. The third subpoena sought general categories of records, including: "1) general ledgers; 2) general journals; 3) cash disbursement journals; 4) petty cash books and vouchers; 5) purchase journals; 6) vouchers; 7) paid bills ..." *Id.* at 607, n. 1, 104 S.Ct. 1237.

After holding that the contents of the documents subpoenaed were not privileged, the Supreme Court declined to overturn the decisions of the courts below that producing the documents would involve testimonial self-incrimination. *Id.* at 613, 104 S.Ct. 1237. As in this case, the language of the challenged subpoenas in *Doe* was very general and, on their face, the subpoenas did not call for production of incriminating information. Nevertheless, unlike the Bankruptcy Court here, the Su-

preme Court concluded that the act of producing the documents sought was privileged and could not be compelled without a statutory grant of use immunity. *Id.* at 617, 104 S.Ct. 1237.

## CONCLUSION

Based on these considerations, this Court concludes that enforcement of the subpoenas would compel Hyde to admit at a minimum that the Finax documents exist, that they are in his possession, and that they are in fact the documents produced. These concessions could establish that the documents are authentic and likely admissible against him. *See* Fed. R.Evid. 901. Without regard to the contents of specific documents, production of those documents would be both testimonial and incriminating, and a "necessary link to incriminating evidence" found within. The Bankruptcy Court's June 16, 1998 decision is reversed and the subpoena is quashed.[5]

---

5. Because this Court has determined that the act of production privilege applies to the doc-uments demanded by the Trustee's subpoena, we need not address Hyde's other arguments.