In re *Grand Jury Subpoena Dated May 29, 2025*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand twenty-five.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> ALISON J. NATHAN,
> *Circuit Judges.*

—————————————————————————

IN RE GRAND JURY SUBPOENA DATED
MAY 29, 2025

—————————————————————————

UNITED STATES OF AMERICA,

*Movant-Appellee,*

v.                                                          No. 25-1726

SEALED APPELLANT,

Respondent-Appellant.[*]

_____

| | |
|---|---|
| **For Respondent-Appellant:** | PATRICK O'KEKE, O'keke & Associates, P.C., Brooklyn, NY. |
| **For Movant-Appellee:** | HENRY L. ROSS (Mitzi S. Steiner, Jacob R. Fiddelman, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from an order of the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 24, 2025 order of the district court is **AFFIRMED**.

Sealed Appellant appeals from the district court's order holding him in contempt for failing to comply with two orders directing him to produce, pursuant to a grand-jury subpoena, draft reports arising out of Sealed Appellant's former employment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

We previously dismissed this appeal for lack of jurisdiction. *See In re Grand Jury Subpoena Dated Apr. 26, 2023*, No. 24-573, 2025 WL 799269, at *2 (2d Cir. Mar. 13, 2025). Because Sealed Appellant has since defied the district court's order enforcing the subpoena and was held in contempt, we now possess jurisdiction. *See In re Air Crash at Belle Harbor*, 490 F.3d 99, 104 (2d Cir. 2007) ("To obtain appellate review, the subpoenaed person ordinarily must defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under [section] 1291." (internal quotation marks omitted)). Proceeding to the merits, Sealed Appellant argues that the grand-jury subpoena violates his Fifth Amendment right because the very act of producing the draft reports would be a form of compelled self-incrimination. We disagree.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Generally, the Fifth Amendment "applies only when the accused is compelled to make a [t]estimonial [c]ommunication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). Nevertheless, the Supreme Court has explained that "[t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own," and thus may constitute an incriminating

3

testimonial communication "depend[ing] on the facts and circumstances" of the case. *Id.* at 410.

At the same time, the Supreme Court has recognized an exception to the rule against self-incrimination, known as the foregone-conclusion doctrine, which applies when "[t]he existence and location of the [subpoenaed] papers are a foregone conclusion and the [subpoena recipient] adds little or nothing to the sum total of the [g]overnment's information by conceding that he in fact has the papers." *Id.* at 411. To invoke the foregone-conclusion exception, "the [g]overnment must establish with reasonable particularity its knowledge as to (1) [the] existence of the documents, (2) the [recipient's] possession or control of the documents[,] and (3) the authenticity of the documents." *United States v. Fridman*, 974 F.3d 163, 174 (2d Cir. 2020) (internal quotation marks omitted). "The [g]overnment must know[] and not merely infer[]" these elements, which must be demonstrated by a quantum of proof that falls between a "mere inference" and "perfect knowledge." *Id.* at 174 n.3 (emphases deleted and internal quotation marks omitted). If it does so, the compelled production of such documents "does not run afoul of the Fifth Amendment." *Id.* at 174 (citing *Fisher*, 425 U.S. at 411).

We review a district court's "determination of questions of law as to the

4

Fifth Amendment privilege" *de novo*, but "we will overturn [a] [d]istrict [c]ourt's [factual] determination as to whether 'the act of producing the documents would involve testimonial self-incrimination' only where such a finding 'has *no support in the record.*'" *United States v. Greenfield*, 831 F.3d 106, 114 (2d Cir. 2016) (emphasis added) (quoting *United States v. Doe*, 465 U.S. 605, 613–14 (1984)).

Having considered the record as a whole, we agree with the district court that the foregone-conclusion doctrine clearly applies here. With respect to the first prong of the doctrine, the district court credited the testimony of two witnesses who represented that Sealed Appellant's attorney, Patrick O'keke, disclosed the existence of the draft reports on at least two occasions. Specifically, Assistant United States Attorney Mitzi Steiner testified that O'keke disclosed to her the existence of the reports at a January 12, 2023 meeting. Steiner further testified that during a January 23, 2023 phone call, O'keke reiterated the existence of these reports and provided details concerning their contents, as well as where they were being stored. This testimony was corroborated by Steiner's contemporaneous notes of the call, the testimony of a law-student intern who also participated in the call, the intern's handwritten contemporaneous notes of the call, the research assignment that Steiner gave to the intern regarding corporate

records held by an employee, and the subpoena that Steiner subsequently issued to O'keke to produce the draft reports. Although Sealed Appellant insists that O'keke used only "noncommittal words and phrases" when discussing the existence of the draft reports, Sealed Appellant Br. at 4, we will not disturb the district court's finding that "O'[k]eke spoke in a declarative tone and not a hypothetical one regarding his possession of the draft report," Sp. App'x at 10, which was supported by Steiner's and the intern's testimony and notes to that effect. *See Greenfield*, 831 F.3d at 114.

With respect to the second prong of the foregone-conclusion doctrine – whether the recipient is in possession or control of the documents – the record similarly supports the district court's conclusion that "the draft reports were first in [Sealed Appellant's] possession[,] then in Mr. O'[k]eke's[,] and then returned to [Sealed Appellant]." Sp. App'x at 16. As Steiner and the intern testified, O'keke informed them in January 2023 that he possessed the draft reports. O'keke subsequently disclosed that on March 2, 2023, he returned Sealed Appellant's file to him, "including any and all documents [Sealed Appellant] may have brought in for [O'keke's] review." Sealed App'x at 37. As a result, when the subpoena was issued less than two months later on April 26, 2023, the government had

6

sufficient knowledge that the reports were in Sealed Appellant's possession.[1]  *See Fridman*, 974 F.3d at 175 ("The [g]overnment must prove its knowledge [of existence and possession or control] at the time the summons was issued."); *see also Greenfield*, 831 F.3d at 125 ("[I]n many circumstances, the [g]overnment's ability to establish existence and control as of an earlier date *does permit* an inference of existence and control as of the date of the [s]ummons." (emphasis added)).  This is especially true given "the absence of any indication that the documents were transferred to someone else or were destroyed" and "the relatively short time period between the date as of which possession was shown and the date of the ensuing" subpoena.  *Greenfield*, 831 F.3d at 125–26 (alteration adopted and internal quotation marks omitted).

Finally, as to the third prong – the authenticity of the documents – the record supports the district court's conclusion that the government could independently authenticate the draft reports.  We have previously explained that documentary evidence can be independently authenticated "through the testimony of third parties familiar with that type of document," "by comparison to a prior version of

---

[1] Because the grand jury that issued the April 2023 subpoena had since expired, the government "cover[ed] its bases," Sp. App'x at 23, by empaneling "a new, current grand jury," Gov't Br. at 17, and reissuing a "substantially identical" subpoena, Add. at 14 n.1, on May 29, 2025.  The government then served Sealed Appellant with the reissued subpoena on June 3.

the document," or "by comparison to other related documents."  *Id.* at 118.  We have likewise held that a document can be independently authenticated by "asking the trier of fact to compare" the different versions, *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 2002*, 1 F.3d 87, 93 (2d Cir. 1993), through the testimony of an individual with knowledge of the author's handwriting, *cf., e.g.*, *In re Grand Jury Subpoena Dated July 6, 2005*, 256 F. App'x 379, 382 (2d Cir. 2007) (discussing voice authentication), or through expert testimony, *see id.*   The district court correctly noted that each of these methods could be employed here – *i.e.*, the government could call another employee who was familiar with the report, ask the trier of fact to compare the filed and draft versions of the report, call a witness familiar with Sealed Appellant's handwriting, or call a handwriting expert.

In sum, we conclude that ample evidence supported each of the three elements of the foregone-conclusion doctrine, and that the grand-jury subpoena did not compromise Sealed Appellant's Fifth Amendment right against compelled self-incrimination.

*   *   *

We have considered Sealed Appellant's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court